George G. Freer and others, Appellants, *v.* Abraham Stotenbur, Respondent.

Where by the terms of the lease, the lands are demised for agricultural purposes only, such limitation excludes the right of the lessee to dig stone in a quarry on the premises, though opened at the time of executing the lease.

Davies, Ch. J.    This action was brought to recover the value of certain stone taken and removed by the defendant from lands owned by the plaintiff's testatrix, Cynthia

Ann Freer, the daughter and devisee of Samuel Watkins, deceased. The co-plaintiff, John T. Durkee, was the lessee of said premises, but as the action proceeded only for the injury to the reversionee, and no claim was made on the trial for the damages to the lessee, he may be regarded as an unnecessary party, and his name can be stricken from the record. Code, § 173.

The following facts and conclusions of law were found by the referee who tried the action, to wit:

*First.* That, on the 30th day of January, 1839, Samuel Watkins, late of the county of Chemung, deceased, being the owner in fee of certain lands in said county, executed and delivered to the plaintiff, John T. Durkee, and one Asher S. Durkee, an indenture of lease, whereby he devised the same to said Asher S. and John T. for the period of twenty years from the first day of April, 1839; that said premises consisted of about one hundred and twenty-five (125) acres of land, *which were leased for agricultural purposes,* and embraced the locality from which stone were taken by the defendant as hereinafter stated; that, on the 7th day of February, 1846, the said Asher S. Durkee assigned all his interest in said lease and in the premises to said John T. Durkee; that, on or before the first day of April, 1839, said lessees took possession of the devised premises, and occupied the same until the assignment to said John T. Durkee, and the said John T. has since occupied as such lessee to the time when this action was commenced.

*Second.* That said William Watkins died, on the 10th day of May, 1851, seized in fee of said premises, and leaving a last will and testament, whereby he devised in fee all his real estate, and bequeathed all his personal property to his wife, Cynthia Ann Watkins; that said will was duly proved as a will of real and personal estate, admitted to probate, and recorded by the surrogate of Chemung county, on or before the 14th day of October, 1851, and letters testamentary were granted thereon to Hiram Gray,

Amasa Dana and Edward Howell, the executors therein named, who took the oath required by law and entered upon the execution of the trusts created thereby.

Third. That said Cynthia Ann Watkins intermarried with George G. Freer about the month of February, 1852; that this action was commenced about the 9th July, 1853, by said Freer and wife, and the plaintiff, John T. Durkee; that since the action was commenced, said Cynthia Ann Freer died, leaving a last will and testament, which has been duly proved and admitted to probate; that letters testamentary thereon have been issued to said George G. Freer and to Orlando Hurd, the executors named therein, and an order has been made substituting the said executors as plaintiffs in this action.

Fourth. That about the 7th of July, 1853, and before the commencement of this action, the said Cynthia Ann Freer by an instrument in writing, assigned to the plaintiff John T. Durkee, an equal undivided half of all claims for stone theretofore taken from said premises, and to all the stone so removed, by whomsoever taken, in which transfer said George G. Freer joined and gave his consent thereto; that on or about the 6th of February, 1852, said Hiram Gray and Amasa Dana, two of the executors named in the will of said Watkins, by an instrument in writing, duly acknowledged and recorded (in which they recite that they are the only executors who have united in making an inventory, that they have fully executed the trusts created by said will), assigned and transferred to said Cynthia Ann Watkins in consideration of the premises therein recited, and of one dollar, all the personal property and estate of the said Samuel Watkins contained in said inventory, and all other personal property whatever belonging to said estate, or to them as executors, and by which they also authorized her to demand and collect in her own name all of the moneys, debts and contracts belonging to said estate, and to them as executors thereof, and which were devised and bequeathed to her.

Fifth. That a portion of said premises so leased as aforesaid, were situated within the bounds of the village of Havana, and upon which was a public highway known as Steuben street; that the said Samuel Watkins was also the owner of other lands lying within the bounds of said village, and upon which was a highway known as Mills street; that in the year 1844, the trustees of the corporation of the village of Havana, claiming to act under the charter of said village, assessed the sum of $530.64 for grading and improving Steuben street, and $167.04 for grading and improving Mills street, in said village; that all the trustees were not present when said assessments were made; that such assessments not being paid, or collected, the trustees aforesaid claiming to act under the authority of said charter, proceeded to sell the portion of the demised premises situated in said village, for the taxes aforesaid; that such sale was made about the 20th day of March, 1845, and said portion of lands was purchased by Peter Tracy for the term of nine hundred and ninety-nine years; that the said sale was entire, and the trustees executed a deed of conveyance to said Tracy, on or about the 31st of March, 1845, of that portion which was not redeemed by Dr. Watkins, which deed was duly recorded in the clerk's office of said county; that the lands so sold were bounded upon and by other streets of said village as well as said Steuben street, aforesaid, and were sold for the aggregate amount of assessments and costs; that the said Peter Tracy, claiming to act under and by virtue of said purchase, at different times quarried stone from that portion of said premises lying on the west side of the center of Steuben street, and within the boundaries of said highway, and on or about the 1st day of May, 1848, sold and conveyed to Charles Cook by a quitclaim deed, a portion of premises so purchased by him, as aforesaid, embracing the lands from which stone were quarried by the defendant, as hereinafter stated; that the defendant, about the month

of May, 1848, by the direction and license of said Cook, began quarrying stone upon a portion of said premises lying in said Steuben street, situated north of where stone were quarried by said Tracy, and that the defendant, down to the commencement of this suit, from time to time, was engaged in taking stone from said quarry; that his excavations extended from two to three rods from the center of said street, and undermined a portion of the fence in the west side of said street; that the lands from which stone were so taken were open to said street and uninclosed; that no one resided thereon, but the said plaintiff, John T. Durkee continued to live upon and occupy the said premises, bounded by the said street, under his lease as aforesaid; that said defendant, between the months of April, 1848, and the 7th July, 1853, took from said premises three thousand and three hundred cubic yards of stone, about two thousand five hundred and forty-five yards of which were removed before the death of said Watkins, and the balance after his death, and before the 7th of July aforesaid; that said stone in the quarry were of the value of $412.50; that after they were taken out and before they were dressed or removed, they were worth the sum of $826, and that after being fitted for the various purposes for which they were furnished by defendant, and by him delivered to the persons receiving the same from him, in and about the village, they were of the value of one dollar per yard, and that stone had been taken from said ledge, at various periods, for thirty years past, at different points along the same; but Steuben street was not opened and worked until after the lease aforesaid.

Sixth. That on or about the 14th July, 1852, the plaintiff, John T. Durkee, recovered a judgment in this court against the defendant, for six cents damages, and $115.07 costs, in an action commenced by said Durkee, by virtue of his right as the tenant of Doct. Watkins, in which action the defendant justified under the corporation sale and the license from Cook as the grantee of Mr.

Tracy, and in which the plaintiff set up and insisted the said sale was null and void and that said action was for a removal of a portion of the same stone specified in the complaint in this action.

He further found as conclusions of law: First. That the plaintiffs are the persons who are entitled to recover whatever damages the defendant is liable to pay for the removal and sale of said stone, as aforesaid, both before and after the death of said Samuel Watkins.

Second. That by the judgment aforesaid, it was deter- mined that said corporation sale was void, and did not protect the defendant, and that such adjudication is bind- ing upon the defendant in this action, and that the recov- ery of six cents damages by said John T. Durkee, forms no bar to the action of the plaintiffs.

Third. That the said sale by the corporation of the vil- lage of Havana to Tracy, was not in accordance with the requirements of the statute, and vested no title or right in said Tracy, and that said Cook acquired no title by the deed from Tracy, and the defendant was not justified in the removal of said stone by the license he derived from said Cook.

Fourth. That the facts of this case do not show an adverse possession on the part of said Tracy, and those claiming under him as against the plaintiff in this action.

Fifth. That the plaintiffs are entitled to recover for the stone so removed as aforesaid, their value in the quarry, which is the injury to the inheritance, and not the value after their removal and being converted into building material, for the purposes of sale, and that the plaintiffs are entitled to interest upon said amount from the time of the commencement of this action, to wit: July 7, 1853. Upon these facts the referee gave judgment for the plain- tiffs for the value of the said stone, $412.50, and interest amounting to $216.06, in all, $629.06, and the judgment thereon was reversed by the General Term of the Supreme Court, and a new trial ordered. The judgment was not

reversed on questions of fact. This court, therefore, is confined in its examination of this appeal to the inquiry, whether upon the facts found by the referee, the plaintiffs were entitled to recover, and secondly, whether any errors were committed by the referee, in the admission or rejection of evidence, and also, whether the motion for a nonsuit was properly refused. The motion for a nonsuit was based mainly upon the ground that the stone taken belonged to the tenants or holders of the lease, and not to the owner of the inheritance or reversionee. It is clear, if this position be tenable, the plaintiffs could not recover in this action, as it appeared, and was not controverted, that Durkee, the lessee, had recovered nominal damages against this defendant for the injury which he as tenant had sustained.

This action is maintained under the provisions of the Revised Statutes, which declare that a person seized of an estate in remainder or reversion, may maintain an action of waste or trespass for any injury done to the inheritance, notwithstanding any intervening estate for life or years. 3 R. S., 5th ed., p. 39, § 8; *Van Deusen* v. *Forney*, 29 N. Y., 9; *Schermerhorn* v. *Buell*, 4 Denio, 422. The reversionee has therefore clearly sustained an injury to the value of the stone taken and carried away, unless the position assumed by the defendant be correct, namely, that the stone belonged to the tenant or lessee, in which event no action can be maintained by the reversionee for their possession. This ground is sought to be maintained upon the finding of the referee, that stone had been taken from said ledge, that is, the ledge upon the premises of the reversionee, at various periods for thirty years past at different points along the same, and the authority of Saunders' case, 5 Coke, 12, and the various cases in which the doctrine there laid down has been affirmed, are invoked as sustaining it.

Assuming, therefore, that this quarry or ledge was open at the date of the lease to Durkee, does it follow, upon

the authority of Saunders' case, that he was entitled to the stone therein by virtue of his lease? It is to be observed, that the premises were leased to Durkee *for agricultural purposes*, and this would seem to exclude, by the terms of the lease, the right to take and quarry stone from the lands demised.

In Saunders' case, he brought an action of waste against Manwood, assignee of the lessee in the tenements, for waste done in digging sea coals, and on great deliberation it was resolved, That if a man hath land in part of which there is a coal mine open, and he leases the land to one for life or for years, the lessee may dig in it, for inasmuch as the mine is open at the time, &c., and he leases all the land, it shall be intended that the intent is as general as his lease is, namely, that he shall take the profit of all the land and by consequence of the mine in it.

Now it is seen that the principle of this case is inapplicable to that now under consideration. No such intendment can arise in this case, as was found in that, for here the land was leased for a particular purpose or object, and by the express terms of the lease, its enjoyment by the lease, was limited to the defined use, namely, for agricultural purposes. It cannot therefore be intended that under the lease to Durkee, he should take the profit of all the land, and of the quarries and mines upon it. This estate and interest were limited and defined, and he took therein only what was necessary for its use and enjoyment for agricultural purposes, and the intendment which the case might raise when the lease contained no specification or restriction, as to the use of the demised premises, is rebutted in this case, by the intendment made on the lease at the time of its execution, and which must be deemed and taken as part thereof, namely, the authorization by the lessor, that the lessees might get or sell stone off the premises described in the lease, by yielding to the lessor one-half of the stone sold by them.

This position is enforced and illustrated by the case of

*Schermerhorn* v. *Buell* (*supra*). The lease contained a clause in these words : "All the timber in the southeast corner of about five acres, suitable and proper for fuel, *to be left and not cleared.*" The lot was wild and uncultivated at the date of the lease. The defendant entered and cultivated most of the land, and on the five acres in the southeast corner of the lot he cut some trees which were suitable and proper for fuel, and carried away the timber. For that wrong that action was brought by the plaintiff, the owner of the land and the lessor. It was held that the lessor had the right, both of property and possession, in the trees, and that he might sue whenever they were carried away and converted to the use of another. In the case at bar, the lease being a demise of the land for agricultural purposes only, it did not pass to the lessee the right to take and carry away the stone in the quarry upon the demised premises, although the same had been opened anterior to the granting of the lease, and that consequently the property therein remained in the lessor, and the removal thereof was an injury to the inheritance.

As to that portion of the stone taken by defendant, before the death of Watkins, the deviser of plaintiffs' testatrix, the right thereto was assigned to Mrs. Freer by the executors of Watkins, and could be rightfully recovered in this action.

The only question, therefore, remaining, is whether the defendant showed any title to the premises from which the stone were taken. He justifies the taking and conversion of the stone on the ground that he had such title. That title was derived through a sale by the trustees of the village of Havana to pay an assessment for the grading and improving of Steuben street, in said village, upon which street said premises were bounded ; that such assessment not being paid or collected, the trustees, claiming to act under the authority of the charter of said village, proceeded to sell the same to pay said assessment ; that at such sale, the premises from which said stone were

taken, were sold to one Tracy for the term of 999 years, and a conveyance executed to him therefor, and that he subsequently conveyed the same to one Charles Cook; and that the defendant took said stone, with the leave and license of said Cook. In the suit commenced by Durkee, the lessee, against this defendant, for the recovery of the value of the same stone, it was adjudged, that said sale and all the proceedings thereon were invalid and void, and conferred no title upon said Cook, and the referee found as a conclusion of law, that by the judgment aforesaid, it was determined that the same corporation sale was void and did not protect the defendant, and that such adjudication was binding upon the defendant in this action. This judgment is binding on this defendant, upon this question, and he cannot be permitted again to litigate the validity of these proceedings and of the title acquired by the assessment sales under them. *Embury* v. *Conner*, 3 Comst., 511; *White* v. *Coatsworth*, 2 Seld., 137; *Castee* v. *Noyes*, 4 Kern., 329. These authorities clearly establish the proposition that this defendant cannot again litigate the validity of that sale, and the title of his license under it.

The order granting a new trial, should be reversed, and judgment on the report of the referee affirmed with costs.

All concur.

Order reversed.