C. B. WHITE, Executrix of ELIJAH J. WHITE, Respondent, v. PATRICK KANE *et al.*, Appellants.

St. Louis Court of Appeals, March 21, 1893.

1. **Landlord and Tenant:** COVENANT FOR USE OF PREMISES. A lease for two rooms recited that they were to be used as real-estate and conveyancers' offices, but contained no express prohibition of any other use. The rooms were in fact used as the offices of a justice of the peace and a constable. There was evidence that such use was less desirable, as regarded the renting of other parts of the building, than that recited by the lease, but it did not appear that the actual use of the rooms created a nuisance, nor that it had in fact occasioned any decrease in the rents of the other parts of the building. Under these facts the court—BIGGS, J., *dissenting*—was disposed to hold that there was not such a substantial alteration in the use of the rooms as to constitute a breach of the covenant.

2. ———: COVENANTS OF LEASE: RIGHTS OF SECOND LESSEE OF LANDLORD. After a lease of parts of a building, the landlord made a lease of the entire building for a term ending shortly before that of the other lease, and further assigned to the subsequent lessee all rents due from other tenants. There was no attornment by the first lessee to the second. *Held*, BIGGS, J., *dissenting*, that the covenants of the first lease could not be enforced by the second lessee against the first.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED AND REMANDED.

*Rassieur & Schnurmacher*, for appellants.

(1) The expression in the lease, "the same to be used as real-estate and conveyancers' offices," does not amount to a covenant that the demised premises should be used for no other purpose. Other uses are not expressly negatived, and equity will not raise a covenant by implication in restraint of a beneficial use of property. *Brugman v. Noyes*, 6 Wis. 1; *Shumway*

*v. Collins*, 6 Gray, 227. The tendency of modern decisions is not to imply covenants or stipulations, which might and ought to have been plainly expressed, if intended. Woodfall's Landlord & Tenant, 176. (2) But even if the expression did amount to a covenant to use the rooms for real-estate and conveyancers' offices, and for no other purposes, plaintiff cannot maintain this action. He is not the lessor of these defendants, nor the successor of their lessor. There is no privity between them.

*Phillips, Stewart, Cunningham & Elliott*, for respondent.

(1) The uses to which the lessees could lawfully put the premises were limited by the specification found in the demising clause of the lease, viz., "the same to be used as real-estate and conveyancers' offices." Any other use was a breach of covenant or of condition. *DeForest v. Byrne*, 1 Hilton, 43; *Godfrey v. Black*, 39 Kan. 193; *Maddox v. White*, 4 Md. 72; *Farwell v. Easton*, 63 Mo. 446; *Freer v. Stotenbur*, 2 Keyes, 474; *Railroad v. Darms*, 39 La. Ann. 766. Injunction was the proper remedy. 1 Woodfall's Landlord & Tenant, 157, *et seq.;* High on Injunctions, secs. 436, 1142, *et seq.;* 3 Pomeroy on Equity, sec. 1342, and note 1; *Howard v. Ellis*, 4 Sandf. 369; *Steward v. Winters*, 4 Sandf. Ch. 587. (2) The plaintiff was entitled to the injunction. Attornment of the defendants to him as his tenants was not necessary to give him a right of action. Revised Statutes, 1889, secs. 6368, 6369, 8842; *Hall v. Wesster*, 7 Mo. App. 56; *Parkman's Adm'r v. Aicardi*, 34 Ala. 393; *Barrington v. Watson*, 38 Hun, 545.

ROMBAUER, P. J.—Upon a bill filed by the plaintiff's testator, the defendants were perpetually enjoined

from using two rooms in the second story of a certain building in the city of St. Louis for other purposes than those of a real-estate and conveyancer's office. The defendants appeal, and assign for error that the decree is not warranted by the weight of evidence nor by any evidence. Whether this complaint is just is the only question presented for our consideration.

We find the facts as established by the evidence to be as follows: The building containing the rooms in question was let by one Churchill to one Bissell for a term of ten years from October 1, 1881, to September 30, 1891. On September 11, 1885, Bissell sub-let the two rooms in question to the defendants, Uhlmann & Wachtel, for six years, expiring September 15, 1891. This lease was executed on part of Bissell by E. J. White as his attorney in fact, and recited that the rooms let were to be used "as real-estate and conveyance offices." On June 30, 1888, Uhlmann assigned his interest in the lease named to Wachtel, and on May 31, 1890, Wachtel assigned his interest in the lease to the defendant Kane. At the date of the institution of this suit, the rooms were occupied by Kane and Dolan to transact therein their business, the former being a justice of the peace and the latter a constable.

On June 10, 1889, the executors of Bissell and his widow, having authority so to do by the terms of Bissell's will, let the entire building to E. J. White for a term commencing June 1, 1889, and expiring May 31, 1891, or three and one-half months before the expiration of the term granted by Bissell in his lifetime to Uhlmann & Wachtel. The lease to White contained a privilege of renewal on part of the lessee for additional four months, or to the date of expiration of Bissell's lease from Churchill. The lease from Bissell's executors to E. J. White contained, among others, these provisions: "And said parties of the first part further hereby, in

consideration of the premises, assign, sell and transfer unto said Elijah J. White all property of every character and description contained in said building, or situated upon said premises, and belonging to the estate of the said James R. Bissell, including all rents due from tenants of said building, and money on hand collected from said tenants." In explanation of this provision it may be proper to state that White had theretofore acted as agent for Bissell's estate in collecting the rents of this property.

It appeared by uncontroverted evidence that checks given by Wachtel to White in payment of rent of the two rooms were made payable to E. J. White, trustee, both before and after June 10, 1889, the date when the executors leased to White. There was a change in the form of the bills rendered to Uhlmann & Wachtel after June 10, 1889, the bills being after that date rendered by White in his own name, and not as trustee or agent. There was no claim on part of White that either Uhlmann or Wachtel ever attorned to him as landlord, or that he had requested them so to do, nor was there any claim that there was a formal assignment to White by Bissell's executors of the lease granted to Uhlmann & Wachtel by Bissell. White testified that he had notified Wachtel that he had become owner of the premises, but Wachtel denied notice or knowledge of that fact. White instituted the present action on June 12, 1890. No action had been taken by him at that time, touching the renewal of the lease for the additional four months. There was no evidence tending to show that the occupancy of rooms for offices of justice of the peace and constable, when properly conducted, created a nuisance, nor was there any evidence tending to show that these offices were not properly conducted for the purposes for which they were occupied. There was evidence tending to show

that the occupancy of rooms for such purposes is less desirable, as far as the renting of other parts of the building is affected thereby, than their occupancy for lawyers' and conveyancers' offices, but it was not shown that, owing to this change in the occupancy, the rents of other parts of the building had decreased in any manner. In fact, it did appear that the justice and constable had occupied another room in the building, from which they moved into the rooms occupied by Wachtel before.

In support of the complaint, that the decree is unwarranted by the evidence, the defendants urge mainly two propositions. The first is that, conceding that the clause in the lease to Uhlmann & Wachtel, that the rooms were to be used as "real-estate and conveyance offices," amounted to a covenant that the rooms were to be thus used, yet the change in the use was not under the evidence an essential and substantial alteration in the mode of use, so as to amount to a breach of covenant. The next is, that there was no privity of any kind between White and Uhlmann & Wachtel, as White was neither the covenantee nor his assignee.

The great industry of counsel on both sides has collected all the reported cases to be found on the first of the above propositions in the United States. These are *Brugman v. Noyes*, 6 Wis. 1; *DeForest v. Byrne*, 1 Hilt. 43; *Maddox v. White*, 4 Md. 72; *Freer v. Stotenbur*, 2 Keyes, 467, and *Shumway v. Collins*, 6 Gray, 227. In *Brugman v. Noyes* the premises were let to be used as cabinet warerooms, the lease containing an express prohibition against the use of them for the manufacture of cabinet ware. The occupancy was about to be changed to that of a cigar store. The court decided that, in view of the express prohibition, the general clause as to occupancy was not in the

nature of an express covenant limiting the use. The reasoning of the court is not very satisfactory. It seems to us that the covenant meant, if anything, that the premises were to be used as cabinet warerooms, with a further restraint prohibiting the manufacture of cabinets therein. In view of the ruling in *Farwell v. Easton*, 63 Mo. 446, that would probably have been the conclusion reached by the courts of this state. In *DeForest v. Byrne* the premises were let to be occupied as a lumber yard. The assignee of the lease ceased to use the premises as a lumber yard, but erected five buildings thereon, making an entirely different use of the premises. Judge DALY, who decided the case, held that the covenant was one running with the land, and that, the premises having been subjected by the change in the manner of occupancy to additional burdens, the landlord had an action against the tenant for additional outlays incurred by him in consequence. In *Maddox v. White* the premises were to be used as the "Baltimore Post Office." The assignee of the lease removed the post office therefrom, and began to convert them into a depot for the manufacture, preparation and sale of beer, and was restrained from so doing at the instance of the landlord by injunction. In *Freer v. Stotenbur* the premises were leased "for agricultural purposes," and the lessee turned part of them into a stone quarry. The action was by the reversioner for the value of the stone, and was sustained. In *Shumway v. Collins*, the premises were let "to be occupied for the same purposes they now are." At the date of the lease the premises were used for the manufacture of carpet bags. A right of re-entry was claimed by a change of their use to the manufacture of caps. The trial court ruled that the change from manufacturing carpet bags to manufacturing caps was not such a change of purpose as constituted a breach of

the instrument. Justice BIGELOW, in affirming this ruling, said: "We think the evidence falls very far short of proving *such an essential and substantial alteration in the mode of use* as to constitute a breach of the agreement." In all these cases, except the last, the change in the use of the premises was essentially different from the use for which the premises were let. The last case cited is the most satisfactory in its reasoning. and, owing to the high authority of the court from which it emanates, is entitled to weight. We must bear in mind that cases of this class do not stand on the same plane as those of an *express prohibition,* which was the case of *Farwell v. Easton, supra.*

Now, applying the law as thus stated to the facts of this case, it would seem that there was not here such an "essential and substantial alteration in the mode of use as to constitute a breach." It does not appear that the landlord was subjected to any loss by the change as in *DeForest v. Byrne,* and *Freer v. Stotenbur. supra,* nor that the proposed use of the premises was radically different, as in *Maddox v. White, supra.* It does not appear that White (even if he were the owner of the covenant, which he was not) lost any rents by the change, or was likely to do so; in fact it does not even appear that any of the other tenants in the building complained.

But, conceding for the sake of the argument that the change worked a substantial alteration, so as to enable the covenantee to take advantage of it, how could White take advantage of it, when he was neither the convenantee nor the assignee of the convenantee? When Bissell's executors, on June 10, 1889, let the entire building to White for a term expiring May 31, 1891, they could only let it subject to prior leases, and, as Bissell's lease to Uhlmann & Wachtel for the two rooms did not expire until September 15, 1891, or four

and a half months after White's own sub-lease expired, White was neither the reversioner nor the landlord of Uhlmann & Wachtel. Whether, in case of an attornment by Uhlmann & Wachtel to White with the consent of Bissell's executors, White would have become the assignee of this covenant in the lease, because it was a covenant running with the land, it is needless to speculate upon, because all the testimony concedes that there never was any attornment to White by Uhlmann & Wachtel, or either of them. They continued to pay the rent to White exactly in the same manner as they had done before. Nor is the fact, that White made out rent bills in his own name, which they paid, entitled to any consideration, since White was the unquestioned assignee of the rents, and as such entitled to collect them in his own name. There was nothing which would have prevented White from acquiring Bissell's entire term by the *option* which was given him in the sub-lease he took. Had he thus become the assignee of Bissell's entire term, the claim that he became assignee of this covenant would have some foundation to rest upon, but it is difficult to see on what foundation it can rest under the evidence in the record. It will not be contended that the assignment of *rents* is either in law or equity an assignment of the lease which secures the rents. "Nothing is more clear than this, that one man cannot come into this court and complain of an injury affecting the property of another person." *Attorney General v. Tel. Co.*, 30 Beav. 287; *Allen v. Wooley*, 1 Blackf. (Ind.) 149; Taylor on Landlord & Tenant, sec. 447.

The case of *Demarest v. Willard*, 8 Cowan, 206, is directly in point. In that case SAVAGE, C. J., points out very clearly the difference between an assignment of rents, and the assignment of the reversion. The

assignment in that case was of the *"within lease, and all the rents which may and shall from time to time become due and payable during the term."* The learned judge held that this language was ineffectual to pass more than the bare rents, and that the assignee could not maintain an action on the covenant to surrender the premises in good repair.

We must conclude that, under the law and evidence, White has failed to show such title in himself to the land, as entitled him to sue upon the covenant, and that for that reason the decree of the trial court must be reversed, and the cause remanded for an assessment of damages on the injunction bond. Judge BOND concurs. Judge BIGGS dissents.

BIGGS, J.—I wrote the original opinion in this case. For the reasons therein stated I thought the judgment ought to be affirmed. The reargument has confirmed me in that opinion. I, therefore, dissent from the conclusion reached by my associates.