TAFFTS, ASSIGNEE OF HILL, INSOLVENT, *v.* MANLOVE.

A WRIT of attachment is effectual to change the title of personal property, only from the time of levy.

A levy may be good as against the defendant in the writ, and not good as to third persons. The conduct of the defendant may make the levy good, by way of waiver, or estoppel, or agreement.

As to third persons, there can be no levy when the officer does not know the subject of the levy—as where he stands at the door of a store, which is locked, and keeps others out. The levy dates from the time he gets into the store and takes possession.

After a petition and schedule in insolvency are filed, the control and dominion of the insolvent's property are transferred to the Court. And a creditor cannot, after such filing, certainly not after the order staying proceedings, seize the property. The order operates by its own force from its date, and no notice need be given of it to a Sheriff with a writ against the insolvent.

Attachment issues against H. and the Sheriff proceeds with the writ to his store, which is locked and fastened, front and rear, by iron shutters. The Sheriff, with his Deputy, stands at the doors, guarding all entrance. H. now files his petition and schedule in insolvency, and the usual order of stay of proceedings is made. H. returns to the store and advises the Sheriff of these things. The Sheriff threatens to break open the store, when H. gives him the key, and he enters and levies. *Held*, that the Sheriff had no right to levy, and that the property vested in the assignee of the insolvent, subsequently appointed, by relation, from the filing of the petition and schedule.

APPEAL from the Sixth District.

*Latham & Sunderland*, for Appellant, argued : 1. That the Sheriff had made a perfect levy before the petition and schedule of Hill were filed. That neither actual, manual possession of the goods, nor an inventory were necessary. That his possession was

such that no one could have taken the goods from him without being a trespasser. (*Dresser* v. *Ainsworth*, 9 Barb. 620; *Green* v. *Burke*, 23 Wend. 488; *Westervelt* v. *Pickering*, 14 Id. 123; *Winteringham* v. *Laforge*, 7 Cow. 115; *Phillips & Brown* v. *Hall et al.* 8 Id. 610'; *Stewart* v. *Wells & Johnston*, 6 Barb. 79.)

2. That the mere filing of the restraining order does not, *eo instante*, stay all proceedings against the insolvent; that the order can operate only on those who have notice of it, and that the notice to a Sheriff, with process in hand, must be in writing.

3. That the provision in the Insolvent Act requiring the Judge to "stay all proceedings," etc. contemplated a service of notice by the insolvent, on all parties whose acts were to be stayed, and prevented the Clerk of the Court, where the stay was granted, from issuing process. But that it was not designed to prevent persons, whose liens had attached, from enforcing them. (*Chauncey* v. *Baldwin & Wadsworth*, 2 How. P. R. 203; *Benedict* v. *Lord*, Id. 82; *Adams* v. *Hackett et al.* 2 Cal. 198.)

*Clark & Gass*, for Respondents, argued: 1. That, under the provisions of the Insolvent Act, "the surrender" of the property is made by filing the petition and schedule; and, that the liens protected by the 36th Section, are only such as exist at the date of such surrender.

2. That, in this case, there was no such levy of the attachment of Gilman & Co. at the time Hill filed his petition and schedule, as to constitute a lien. That so far from there being a levy, the Sheriff would have been a trespasser had he prevented persons from entering the store. That the authorities cited to show no manual handling of the goods was required to effect the levy, go only to the extent that where the defendant in the execution, gives to the Sheriff a list of certain articles upon which to levy, or points out to him such articles, or consents that they shall be considered as levied upon, in all such cases, actual possession by the Sheriff is not necessary to constitute a good levy as against the defendant in the execution. And in the case from 9 Barb. 620, the Court expressly say it was not an actual levy.

3. That the restraining order operated without being served on the Sheriff. He had notice of it at the door of the store, before he entered, and this was sufficient. An injunction operates from the time the order is made, before it is scaled, or even

drawn up, where the party has notice of it in any way whatever. (1 Barb. Ch. Pr. 633, 634; Waterman's Eden on Injunctions, 941.)

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

Upon this state of facts, the several questions of law argued by the counsel arise :

One Hill, an insolvent debtor, a few minutes after 12 o'clock, P. M. of the 2d November, 1857, filed in the Clerk's office of the District Court, his petition of insolvency, with a schedule annexed, together with an order from the District Judge staying all proceedings at the suit of his creditors against him. About three minutes after 12 o'clock of the same day, Gilman & Co. filed a complaint and issued an attachment against Hill, which writ was placed in the hands of the Sheriff. At five minutes past 12, the Deputy-Sheriff, with a sworn keeper, started to the store of Hill, where they arrived at ten minutes after 12 o'clock. The storehouse was a fire-proof brick building, used only as a store, and fastened in front and rear by iron shutters. The store seems to have been closed. The Deputy placed the keeper in the rear, and kept possession of the front door, so that no one could go in or come out of the store. While there—about twenty minutes after 12 o'clock, Hill and his Attorney came to the front door, when the Attorney told the Deputy that Hill had filed his petition in insolvency, and that the Judge had issued a restraining order. The Deputy-Sheriff asked the Attorney if he had any papers to show, and the Attorney said he had not. The Deputy then told Hill that he was about to break open the door of the store, when the key was given to him. He then opened the doors, entered the store, levied on the contents of it, made out an inventory, and left a keeper in charge. The writ, with a return of levy, was filed in the Clerk's office. The order of stay of proceedings was served on the Sheriff or his Deputy. By consent of the defendants, the goods attached were sold by the Sheriff, and the money paid into the Clerk's hands, to abide the decision. It seems to be agreed that the issuance of the attachment and its reception by the Sheriff, and his Deputy's acts at the store before it was opened, were all prior to the filing of Hill's petition and the order of the Judge, though the actual en-

Taffts *v.* Manlove.

try, and view, and seizure, of the goods, were subsequent to the petition and order.

Upon this state of facts two propositions are made by the Appellant:

1. That the acts of the officer prior to the entry into the building, constitute a sufficient levy upon the goods in the store.

2. That if this be not so, yet the order of the Judge staying proceedings after the filing of the insolvent's petition, was no bar to the subsequent actual seizure of the goods, in the absence of a legal service of the order upon the attaching creditor or the Sheriff.

As the writ of attachment is only effectual to change the title of goods from the levy of the process, the question arises, what constitutes a levy, valid and sufficient in law to vest the property? It may be admitted, as unquestionably the law is, that a levy may be good as against the defendant in the writ, when it would not be good as to third persons. But we apprehend that this distinction is not based upon any difference in the legal requisites of a levy, but in the fact that the conduct of the defendant, either by positive or negative acts, may amount to a waiver, or an estoppel, or agreement that *that* shall be a levy which, without such conduct, would not be sufficient. However this may be, we can conceive of no principle of law, and have been referred to no case, which holds that the acts relied on by Appellant constitute a levy. Waiving everything else, the essential element of an intention to levy prior to the entry seems to be wholly wanting, from anything we can see in the agreed statement. That the Sheriff came to the house in order to make the levy is very certain; but that he intended to make, or considered he *had* made, a levy on goods in the house, by standing at one door and putting his companion at the other, does not appear. He made then no note or memorandum of the levy—did not, perhaps, even know what goods were in the store, their description or value; and besides this, demanded the key afterward and entered, and *then* seized the goods, took the inventory, and indorsed the levy. There is neither proof nor probability that, before this time, he considered he had seized the goods, or if he did, we think he was clearly mistaken.

In Crocker on Sheriffs, Section 425, p. 172, it is said: "A levy

upon personal property is the act of taking possession of, seizing or attaching it by the Sheriff or other officer," etc.   It is true the author, in Section 427, says : "As against the defendant in execution, no great strictness of form will be necessary in making a levy upon personal property.   Thus the mere entering by the Sheriff of the property of the defendant, with his assent, upon the execution, will be conclusive upon such defendant, though the property is not present, and the officer does not *know* where it is."   But this authority and the cases cited by Appellant's counsel, are far from proving the proposition they labor. It is not necessary to review these cases, for all of them turn upon a wholly different principle from that invoked.   The principle, namely, that the assent of the defendant is sufficient as against him, even where the goods are not within view, or subject to the dominion of the officer.

But it cannot be necessary to pursue this inquiry.   It is too plain for argument, that there can be no levy when the officer does not even know the subject of the levy.   As well might a Sheriff stand in the street and levy upon the contents of a banking-house as to stand in a store door at midnight, and claim that merely by standing there and preventing any person from coming into the store, he had levied on the contents, whatever they were, of the store ; and this without having any knowledge of the general nature of the stock, much less of the particular description or value.   But, as we said before, nothing appears to show that the mere watching and guarding of the storehouse was meant to be a levy on the property inside ; but these were acts merely in prosecution of the design to enter the house and levy on the property there, which purpose was afterward accomplished.

But at this latter time the restraining order was made by the Judge; and this brings up the other and more difficult question—the effect of this order upon the plaintiff's right to levy.

3. If, before the petition of insolvency had been filed, the lien of this plaintiff had attached, the insolvent proceedings would not, under the statute, have divested it.   But we have seen that no lien had attached until after the filing of the petition and the granting of the restraining order.   By section five of the Insolvent Act, (Wood's Dig. 496,) it is provided that the Judge re-

ceiving the petition of the insolvent shall make an order requiring the creditors of the insolvent to appear, and show cause why the assignment of the insolvent's estate should not be made and he discharged, etc.; and by the 8th Section " the Judge shall direct the Clerk to issue the notice calling the creditors together," etc. By Section 9th, " when issuing the order for the meeting of the creditors, the Judge *shall order that all proceedings against the debtor be stayed.*" It is observable that this statute contemplates the double purpose of discharging the debtor and of distributing his assets among his creditors. He is allowed, too, by the statute, a provision out of the property. The Court having jurisdiction of this subject, has control over the estate as a portion of the subject of its litigation. The whole property of the bankrupt may be considered as in its custody and within its control. The proceeding, at least in its preliminary stages, is more in the nature of a proceeding *in rem* than *in personam.*

The order in the statute mentioned is not like a special restraining order or injunction between litigants, the effect of which depends on its service. The effect of this order is from the making of it, and like every other order made by a Court over a subject as to which it has acquired jurisdiction. No notice was necessary, therefore, to the Sheriff or the creditor to give it effect. The petition and the schedule filed was a transfer to the Court of judicial control and dominion of this property; and, after that transfer, the creditor could not seize or interfere with it—certainly not after the making of the order restraining these proceedings.

If this were not so, these proceedings might be made the means of the greatest frauds, and the statute would wholly fail of its purpose of distributing the insolvent's property, and the construction would defeat the power to allot anything to the petitioner; for, if the personal service were necessary to give effect to the order, a creditor, or a few creditors, might keep out of the way of service, and have the others restrained by service, and then those not served might come in and sweep all of the property. It was contemplated that the effect of the application should have relation from the filing of the petition; but this would be impossible, if all the creditors had to be served

with this restraining order, and until service, the effect of it be postponed.

We think, then, that the creditor had no right to levy after the granting of this order; but that the property was protected from his levy, and afterwards vested in the assignee, who took, by relation, from the time of the filing of the schedule and petition.

This renders it unnecessary to consider the question of the sufficiency of the notice.

Judgment affirmed.