[No. 7847. Department One. July 29, 1909.]

JOHN W. CUPPLES, *Appellant*, v. J. A. LEVEL *et al.*,
*Respondents.*[1]

EXECUTION — LEVY — HOW MADE — PERSONAL PROPERTY—GROWING
CROPS.- Under Bal. Code, §§ 5269, 5362, requiring personal property
capable of manual delivery to be levied upon by taking it into cus-
tody, a levy upon a growing crop of wheat made by posting notices
of sale and delivering a copy of the execution and notices to the judg-
ment debtors, is not valid as to subsequent purchasers from the
debtors.

LANDLORD AND TENANT—LEASE—CROPS—ASSIGNMENT—CONSENT OF
LESSOR—WAIVER OF RE-ENTRY. The landlord's consent to the assign-
ment of a lease is not necessary to transfer title to the crop where
there was no nonassignment clause in the lease, nor where the crop
had been harvested and marketed by the assignees and the right of
re-entry had been lost by nonaction of the lessor.

Appeal from a judgment of the superior court for Lin-
coln county, Warren, J., entered September 25, 1908, upon
the verdict of a jury rendered in favor of the defendants, in
an action of claim and delivery. Reversed.

*Martin & Wilson,* for appellant.

*Merritt, Oswald & Merritt,* for respondents. ·

GOSE, J.—The appellant, on July 17, 1908, commenced
this action under the claim and delivery statute, Bal. Code,
§ 5262 (P. C. § 854), by filing his affidavit and serving a
copy thereof upon the respondent sheriff, and by giving to
the sheriff the statutory bond; whereupon the appellant took
possession of a growing crop which the sheriff had thereto-
fore sought to seize under an execution on an ordinary
money judgment. Upon the maturing of the crop, it was
harvested and marketed by the appellant. The case was
tried to a jury. From a judgment upon a verdict in favor
of the respondents, this appeal is prosecuted.

The appellant has assigned numerous errors, but the view

[1]Reported in 103 Pac. 430.

we take of the case limits the principal inquiry to the single question whether the sheriff had made a legal levy upon the property. A brief statement of the facts as they appear in the record will suffice. On March 7, 1907, the respondent O'Connor leased to Frank P. Bell and John M. Bell section 85, in township 22, range 85, in Lincoln county. The lease provided that the lessees should deliver to the lessor, as rental, "one-third free of charges" of all the grain grown upon the leased premises. It contained no covenants against assignment. On February 15, 1908, the lessees assigned the lease to one Sadie Wareham, stipulating in the assignment that it was "subject, nevertheless, to the rents and covenants in the said indenture contained." The lease, together with the assignment, was filed for record on the last-named date.

On April 7, 1908, the respondent O'Connor recovered a judgment against the Bells and Wareham, and on the 13th day of June following, an execution was issued thereon and placed in the hands of the sheriff for enforcement. On the 16th day of June, the respondent sheriff sought to levy on all the right, title, and interest of the execution defendants in the crop of grain then growing upon the leased premises. His return states:

"Said levy being made by delivering to the within named defendants a true copy of the within execution, and therewith a true copy of a notice of sale setting forth that the above described property would be sold on the 27th day of June, 1908."

Prior to the date set for the sale, the sheriff was restrained from making the same. The restraining order was dissolved on the 7th day of July, 1908, and on the following day the sheriff, without a further levy, posted notices stating that the sale would occur on the 18th day of July. Before the last named day, the affidavit and bond were served. On July 7, Sadie Wareham, for a recited consideration of $1,600, conveyed to the appellant, by an instrument in writing, an undivided two-thirds of all the wheat then growing on the leased

land. This instrument was filed for record July 8. The appellant was not a party to the proceeding in which the judgment was entered upon which the execution was issued and the attempted levy made. The court, *inter alia*, instructed the jury as follows:

"It is undisputed in this case that a valid levy was made upon this property by the sheriff. You have nothing to do with how the sheriff makes a levy whether he goes out and puts up notices or how, therefore it must be taken as affirmed by the evidence that a valid levy was made somewhere back in June, that testimony is here before you and not disputed. The evidence is undisputed that the sale under that levy was restrained by this court, that after that time that restraining order was set aside, and I instruct you that after the first levy the property was in the custody of the law and that during that time no person could acquire any title as against the sheriff, and as against that title could not acquire any title."

At the conclusion of the instructions, in answer to an inquiry by a juror, the court further instructed: "He can't be the owner now if not prior to the levy in June. He can't be the owner now unless before that time." Appellant properly excepted to these instructions, and has assigned error upon them.

It will be observed that the appellant acquired his interest in the subject-matter in litigation after the attempted levy. We have seen that the sheriff did not actually seize the property, and that he did nothing in the way of executing the writ except to post notices of sale and deliver a copy of the execution and notices to the judgment debtors. Did this constitute a constructive seizure? We think not. The code, Bal. Code, § 5362 (P. C. § 522), provides that, "personal property capable of manual delivery shall be attached by taking into custody," and § 5269 (P. C. § 864), provides that "property shall be levied on in like manner and with like effect as similar property is attached, and until a levy personal property shall not be affected by an execution." We think these are the only provisions of our statute touching the

levy of a writ of execution upon personal property. The return does not show that the sheriff went upon, or even saw, the property; nor did he constitute the judgment debtors, or either thereof, or any other person, his agent to keep possession of it. In fact, he had no possession, either actual or constructive, to intrust to another.

In *State v. Poor*, 4 Dev. & Bat. Law 384, 34 Am. Dec. 387, a constable having a writ of attachment in his possession sought to levy upon a growing crop without going on the land upon which the same was growing. He returned the writ indorsed: "Levied on a field of growing grain of Thomas Poor." Speaking to the legal effect of the attempted levy, it is said:

"We think that it was correctly held by his honor that the constable by indorsing on the writ of attachment in the manner set forth in the case, that he had levied on the growing crop of the defendant in the attachment, did not acquire the legal possession thereof. To the levy of a writ upon personal property—whether a writ of attachment or of execution— the law requires a seizure. If, in the nature of the thing, actual seizure be impossible, then some notorious act as nearly equivalent to actual seizure as practicable, must be substituted for it. The least that can be required in the levy on a growing crop is, that the officer should go to the premises, and there announce that he seizes the same to answer to the exigency of his writ."

In *Taffts v. Manlove*, 14 Cal. 47, 73 Am. Dec. 610, at pages 612-13, the court, in construing the acts necessary to constitute a levy on personal property, said:

"It may be admitted, as unquestionably the law is, that a levy may be good as against the defendant in the writ when it would not be good as to third persons. . . . But it cannot be necessary to pursue this inquiry. It is too plain for argument that there can be no levy when the officer does not even know the subject of the levy. As well might a sheriff stand in the street and levy upon the contents of a banking-house as to stand in a store door at midnight, and claim that merely by standing there and preventing any person from coming into the store he had levied on the contents,

whatever they were, of the store; and this, without having any knowledge of the general nature of the stock, much less of the particular description or value."

In *Nighbert v. Hornsby*, 100 Tenn. 82, 42 S. W. 1060, 66 Am. St. 736, the sheriff was about to sell a certain lot of corn under execution, when a replevin action was instituted to recover possession and prevent the sale on the ground that no levy had been made. In holding the levy effectual, at page 738, the court said:

"It was sufficient if, as indicated by the evidence mentioned, he went into the presence of the property in question with the ·power and purpose then and there to seize it under a valid execution, and, by virtue of the writ, really assumed control of the property, as upon a manual seizure, with the plaintiff's knowledge, and, having done that, then left the property in the plaintiff's custody by his consent and with his promise to keep it safely until demanded for sale, first noting the fact of the levy upon another paper, and subsequently, in due season, making proper indorsement on the execution itself."

In *Jones v. Howard*, 99 Ga. 451, 27 S. E. 765, 59 Am. St. 231, the court, defining a levy upon personal property, at page 235, said:

"To the completion of a levy, seizure, either actual or constructive, is absolutely indispensable. Actual seizure is accomplished by a mancupation of the thing intended to be seized. A constructive seizure is accomplished by the actual reduction by the officer of the property intended to be seized to his own control. He must have brought such property so far under his subjection that he could exercise control over it. He must exercise or assume to exercise dominion by virtue of his writ. He must do some act for which he could be successfully prosecuted as a trespasser, if it were not for the protection afforded him by the writ."

"In general it may be said, that it [the levy] shall be such a custody as to enable an officer to retain and assert his power and control over the property, and so that it cannot probably be withdrawn, or taken by another, without his knowing it." *Hemmenway v. Wheeler*, 14 Pick. 408, 25 Am. Dec. 411, 413.

See, also, *Meyer v. Missouri Glass Co.*, 65 Ark. 286, 45 S. W. 1062, 67 Am. St. 927.

It is not necessary for us to decide whether a growing crop can be levied upon on a writ of execution or, if so, how or under what circumstances it can be subjected to such process. In this case there was no levy made, and at the close of the trial the court should have directed a verdict for the appellant. He had shown that he was the owner of the grain. There was no evidence to the contrary. The respondents contend that no rights were acquired by the assignment to Sadie Warcham, it not appearing that it was made with the lessor's consent. This position is untenable for three reasons, (1) because there is no nonassignment clause in the lease; (2) at the time of the trial the crop had been harvested and marketed; (3) if the lessor had an implied right of reentry in case of assignment without his consent, the right was lost by nonaction. This case is therefore distinguishable from *Tipton v. Martzell*, 21 Wash. 273, 57 Pac. 806, 75 Am. St. 838.

The judgment will therefore be reversed, with directions to the trial court to enter judgment for the appellant for the grain and its proceeds, and for costs of suit.

RUDKIN, C. J., CHADWICK, FULLERTON, and MORRIS, JJ., concur.