[File No. 6172.]

FIRST STATE BANK OF BARTON, N. D., a Corporation, Respondent, v. ST. ANTHONY & DAKOTA ELEVATOR COMPANY, a Corporation, Appellant.

(250 N. W. 778.)

Opinion filed October 25, 1933.

*Libby & Harris,* for appellant.

140

*Harold B. Nelson,* for respondent.

Burr, J. This is an action wherein plaintiff seeks to recover damages for the alleged conversion of grain upon which it claims a mortgage.

The defendant denies mortgagor had any interest in the grain, and that it converted the same.

A jury was waived and the court made findings of fact and conclusions of law favorable to the plaintiff.

Judgment was entered against the defendant for $591.24 and interest and costs, and defendant appeals.

There are forty-two specifications of error including sub-divisions. Twenty of these deal with the admission or rejection of testimony, twenty are based on errors in the findings of fact and on the insufficiency of the evidence to justify the findings and conclusions, the remaining two deal with the act of the court in permitting an amendment to the complaint, and the amount of the judgment.

There are four main issues to be determined—Did the mortgagor have a mortgageable interest in the grain raised? Did the plaintiff have a valid mortgage thereon? was there a legal demand for the grain made upon the defendant? and is the amount demanded as due excessive?

The record shows the Berwick State Bank owned land in McHenry county, which land was rented to one Kosmas Heisler by written contract wherein it was agreed that Heisler was to have one-half of the crop on the performance of certain conditions, title to and possession of the crops to remain in the landlord until division.

At the time of the negotiations for this lease the landlord and tenant discussed the possibility of sub-letting a portion of this land by Heisler to his son-in-law Senger, though the contract contained a provision that such sub-letting could not be made without written consent of the landlord. However a sub-letting was made and it was agreed that Senger was to have a one-third interest in Heisler's share of the crops. Senger moved onto the farm and assisted in the farming. In May of

that year he gave to the plaintiff a chattel mortgage on his share of the crop to secure payment of two notes—one for $157.00 and one for $400.00—each drawing interest at nine per cent, dated December 21, 1928 and due March 1, 1929 and April 1, 1929, respectively. These notes had been secured by chattel mortgage theretofore and this crop mortgage was taken as supplemental security.

The chattel mortgage on other property held by the plaintiff to secure the same indebtedness was foreclosed and its net proceeds of $158.72 credited upon the notes involved. This action is to recover damages for the conversion of grain to the amount of the value of the grain at the time of the conversion, or of the interest therein which plaintiff had because of this supplemental chattel mortgage.

The chattel mortgage involved herein was duly filed with the register of deeds of McHenry county on May 29, 1929 and in August, and prior to the defendant's purchase of the grain in dispute, written notice was served upon the defendant at Berwick, North Dakota that the plaintiff had a chattel mortgage upon Senger's interest in the crops raised upon the McHenry county land.

When the crop matured 3669 bushels of durum wheat were delivered to the defendant's elevator at Berwick in the name of the Berwick State Bank and of Heisler and were thereafter divided. Heisler sold his one-half. At Heisler's request the defendant made out two checks for Heisler's share—one payable to Heisler, in the sum of $1,219.10 and one to Senger in the sum of $609.55. These checks were cashed, and paid by the defendant.

It appears that at the time of the sale there were about seven hundred bushels of durum wheat left on the farm but Senger had no interest therein.

Defendant contends that Senger had no mortgageable interest in the grain.

The trial court found that Heisler had sub-let a portion of the land to Senger and gave him an undivided one-third interest in the crop.

The contract between the bank and Heisler created the relationship of landlord and tenant. Minneapolis Iron Store Co. v. Branum, 36 N. D. 355, 162 N. W. 543, L.R.A.1917E, 298; Merchants' State Bank v. Sawyer Farmers Co-op. Asso. 47 N. D. 375, 182 N. W. 263, 14 A.L.R. 1353; Meyers v. Raisty, 48 N. D. 54, 183 N. W. 112. If Senger

leased from Heisler with the acquiescence of the landlord then he was a tenant also.

Defendant contends the evidence shows Senger was not a tenant, but was a mere "cropper"; that he was working for Heisler and received a part of the crop as his compensation. If Senger were a sub-tenant then he had an interest in the crop, and if he was a mere "cropper" he had also an interest in the crop. One who gets part of the crop as wages is a "cropper." See Bowers v. Graves, 8 S. D. 385, 389, 66 N. W. 931, 932, where the relations of owner and the worker are discussed and shown to be a joint venture in which each has an interest in the crop. "A cropper on shares has such an interest in the crop as is the subject of mortgage." Beard v. State, 43 Ark. 284.

Defendant says this mortgage was void because no sub-letting could be had without the written consent of the landlord and the record shows no such written consent. It cites 16 R. C. L. 831, and various decisions to substantiate the contention that such a restriction in a lease is valid and will be upheld. However such restrictions are for the benefit of the landlord and may be waived by him. Such waiver need not be in writing and it is evident the landlord did not care to insist upon that provision for his benefit.

A landlord's right to re-enter and take possession of the land leased under certain restrictions is waived by non-action as to the restriction. Heisler's tenancy was for "The season in farming in the year 1929, commencing March 4th, 1929 and ending Oct. 1st, 1929." The crop was harvested, marketed and delivered and nowhere is it intimated that the landlord took any advantage of the provision against sub-letting, or desired to do so.

"The contention that no rights were acquired by the assignment of a lease providing that lessees should deliver to lessor one-third of all the grain . . . because such assignment was without lessor's consent, is untenable where the crop has been harvested and marketed." Cupples v. Level, 54 Wash. 299, 103 P. 430, 23 L.R.A.(N.S.) 519.

The landlord must have known Senger was on the land, it got its share of the crop and there is nothing to indicate its making any objection. The defendant cannot take advantage of this.

The defendant says plaintiff has no valid mortgage because its mortgage was not entitled to be filed, for though it was "signed by Senger

and properly witnessed it was not, however, shown that a copy of the mortgage was at the time of this execution delivered to the mortgagor."

Attached to the instrument itself is a mortgagor's receipt for the copy signed by Senger and wherein he acknowledges "that at the time of the making and delivery of this mortgage, the mortgagee delivered to me a full, true and complete copy of the foregoing mortgage without additional cost to me and that I received such copy." It is undisputed that Senger signed this receipt, and nowhere does he attempt to dispute its accuracy. The contention of the defendant is that at the trial of the case Senger testified he got a copy but "would not testify that it was delivered to him at the time he signed the mortgage." At the time of the trial his memory did not serve him as to when he got the copy; but his receipt is not contradicted. The mortgage was entitled to be filed.

Appellant says there is no proof of any legal demand for the return of the grain. The grain was not stored. Defendant bought it from the landlord and tenants at the time of delivery. The trial court found that plaintiff made demand on the defendant for the grain on September 28, 1929, or for its value, "to the extent of its special property and interest therein, which said demand was refused." Defendant says this finding is erroneous. The record shows that on or about the date stated the representative of the plaintiff called at the elevator, asked him if he had bought the Senger grain and told the elevator agent "I would expect them to pay for it." This representative testified also that later he talked with the district superintendent of the company and told him they had a mortgage on this crop and told him "that their elevator had bought it." Again he testified, that in talking to the manager of the elevator he told him "that we would expect to hold this elevator liable for buying this mortgaged grain." This is the substance of the testimony showing a specific demand. Defendant says this is no evidence of demand, that nowhere and at no time did the agent demand the return of the grain or its value. We are of the opinion that this testimony is not sufficient to show a formal demand.

Plaintiff says that under the circumstances of the case no previous formal demand was necessary. With this latter view we agree. It is clear from the testimony in this case that a formal demand would be unavailing. Nowhere is it intimated that the defendant at any time

could have returned the grain, desired to return the grain, or was willing to return the grain. Demand or lack of demand does not constitute the conversion. It is merely proof of conversion. Rolette State Bank v. Minnekota Elevator Co. 50 N. D. 141, 195 N. W. 6; More v. Burger, 15 N. D. 345, 107 N. W. 200; Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 747. However, when it is clear that a demand will be unavailing it need not be made before the commencement of the action. More v. Burger, 15 N. D. 345, 107 N. W. 200, supra; First State Bank v. Osborne-McMillan Elevator Co. 53 N. D. 551, 207 N. W. 37.

The bringing of the action was sufficient demand in this case. Even if necessary to prove demand for the purpose of establishing value the record is complete in this respect. The action was brought on May 21, 1930, at which time service of the summons and complaint was admitted. The parties stipulated that on that date the price of No. 1 amber durum wheat of the quality involved here was seventy-four cents per bushel, and the price of No. 1 durum was seventy-two cents per bushel at Berwick.

The record shows that Senger was entitled to sixty-two bushels and twenty-five pounds of No. 1 durum and five hundred and forty-nine bushels and five pounds of No. 1 amber durum and its value at the time of the commencement of the action is shown. The record shows the plaintiff was entitled to judgment for $451.25 with interest from May 21, 1930 and costs in the lower court.

The numerous objections to introduction of testimony have been examined and we find nothing reversible therein.

The court was justified in permitting the plaintiff to amend the complaint to conform to the proof and no error in this respect has been shown.

Defendant says the court was in error in the amount of the judgment permitted.

As the objection to the amount of the judgment rests upon the alleged error in computation of interest on the notes, and the value of the grain converted is less than the amount due on the notes after crediting the net proceeds of the sale of property on foreclosure of the other mortgage it is not necessary to examine this issue.

The judgment of the trial court is modified to the extent that judgment should be entered for the plaintiff for $451.25 with interest from May 21, 1930, and costs of the·trial court, and with this modification the judgment is affirmed.

BIRDZELL, Ch. J., and CHRISTIANSON, NUESSLE and BURKE, JJ., concur.