NICK JAMSON, APPELLANT, v. JOHN POULOS ET AL., APPELLEES.

168 N. W. 2d 526

Filed June 6, 1969. No. 37191.

Cunningham & Blackburn, for appellant.

John R. Higgins and Albert P. Madgett, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

SPENCER, J.

This is an action for specific performance of a contract with option to purchase real estate. The matter was tried on a stipulation of facts. The trial court dismissed plaintiff's petition and he perfected an appeal to this court.

On August 22, 1959, John Poulos and Amorfia Poulos were the joint owners of the following described real estate: The north 22 feet of the south 64 feet of Lot 1, Block 56, Original Town, now City of Grand Island, Hall County, Nebraska, upon which was situated a two-story brick building, the ground floor of which had been used for business and commercial purposes and the upstairs floor of which was unimproved and vacant. On that day, the Pouloses entered into an agreement with

Karl A. Rasmussen who was the owner of adjoining property upon which was situated the Koehler Hotel and Tavern, leasing to him the following described property: "The second floor of the building situated on the North Twenty-two (22) Feet of the South Sixty-four (64) Feet of Lot One (1), Block Fifty-six (56), Original Town, Grand Island, Hall County, Nebraska," for a term of 10 years for the sum of $360 per year, payable in advance. Said lease contained the following provision: "Second party must furnish heat and water and is given the right to install a door or passageway between the leased property and the property owned by second party immediately adjoining to the North and to make such repairs and improvements desired all at his own expense. Second party agrees, at the end of the lease, to close the passageway and fix the door as it was originally, providing second party has not bought the above described real estate. Second party is given the option of purchasing, at any time during the term of the lease, the above described real estate for $22,000.00 and to give first parties notice, in writing, of his intention to purchase. In case the Second Party accepts his option to purchase, then the taxes and rents will be pro rated to the date of sale."

Karl A. Rasmussen went into immediate possession of the second floor of said building, installed a doorway between the leased property and the Koehler Hotel property, and made expensive and·permanent improvements to the leased premises. Rasmussen died December 31, 1959, and by the terms of his last will and testament and by assignment of his heirs, the Koehler Hotel property and the leased premises were assigned to his son, Harold B. Rasmussen.

On October 7, 1961, Harold B. Rasmussen sold and conveyed the Koehler Hotel property and assigned his interest in the lease agreement to the plaintiff herein, who took possession of said premises and made further repairs and improvements thereon. The Pouloses did

not at any time give consent in writing to any of the assignments. However, the assignments were made with their knowledge, and defendants accepted rental payments from the assignees.

The lease in question is on a Huffman form which contains the following printed provision: "* * * that he will not sell, assign, underlet or relinquish said premises without the written consent of the lessor, under penalty of forfeiture of all his rights under this lease, at the election of the parties of the first part * * *."

Defendants admit that because of their acceptance of the rent payments there is a valid lease in effect for the balance of the term of the original lease, but contend that the option was personal to Karl A. Rasmussen and terminated at his death in the absence of a further agreement with the Pouloses. On July 3, 1962, the defendants Poulos conveyed the property to their daughter, Antonia J. Poulos, now Antonia J. Poulos Giallourakis, who is the present record holder of said property. Subsequent to said conveyance, Antonia accepted the annual rental payments from the plaintiff.

On October 20, 1966, Antonia entered into a lease with Rex Haberman for the main floor and basement of the building situated on the above-described premises. Said lease agreement contains the following stipulation: "Lessor shall put in a new ceiling in the above premises. Second party shall pay all utilities, plumbing, repairs and general up-keep. Second party may remove own equipment at expiration of Lease, but must leave building in as good condition as when he took over Lease— fair wear and tear excepted. If building sold, second party has right to take his equipment. In the event Nick Jamson does not exercise his option to purchase the building in three years first party reserves the right to sell the building at the end of three years to another party in which event second party shall be entitled to a 30-day notice. First party hereby gives second party

a 5-year option to lease said premises to be exerciseable if first party still owns said building."

On July 31, 1967, plaintiff notified the defendants Poulos and Antonia that he had decided to exercise the option for the purchase of the real estate for the sum of $22,000, and tendered a certified check for 5 percent of the purchase price. This certified check was returned to the plaintiff by the defendant Antonia. On August 18, 1967, plaintiff caused to be served upon the defendants Poulos and Antonia a written notice of his decision to exercise the option, together with a certified check in the sum of $22,000, payable to the three of them, and requested delivery of a deed conveying the real estate. Said defendants refused to recognize plaintiff's right to exercise the option, and this action resulted. John Poulos died intestate during the pendency of the action, and it was revived in the name of his wife and daughter.

A provision in a lease granting the lessee an option to purchase the property during the term is supported by the consideration paid for the lease and cannot without the consent of the lessee be revoked during the period granted for its exercise. Harper v. Runner, 85 Neb. 343, 123 N. W. 313.

Defendants concede that where a lease of real property contains an agreement giving the lessee the privilege of purchasing the property covered by the lease which is not specifically restricted to the lessee, such covenant runs with the land and the option to purchase passes upon assignment of the lease to the assignee thereof.

It is the position of the defendants that the present lease by its terms does restrict the option to purchase to the original lessee. They draw this inference from the fact that the lease is made out to Karl A. Rasmussen alone and does not mention his wife or heirs, and that the lease refers only to Karl A. Rasmussen either as "second party" or with the pronoun "he" or "his." There is

no merit to this contention. The lease was made with a single individual and was so drawn. The option was an integral part of the lease. If lessors intended it to be personal to the lessee only, they could have so provided at the time the lease was executed. The law was well established in this jurisdiction that covenants against assignment or underletting are not favorably regarded by the courts and are liberally construed in favor of the lessee. Chesnut v. Master Laboratories, 148 Neb. 378, 27 N. W. 2d 541.

Defendants also contend that the option to purchase terminated with the death of Karl A. Rasmussen. An option to purchase real estate contained in the lease agreement is not terminated by the death of the lessee during the term and before the exercise of the option, in the absence of express limitation.

Defendants further contend that the lessee cannot exercise an option different in scope from the precise option conferred in the lease, on the theory that the option is limited to the second story of the property, which was the portion used by the plaintiff. We do not so construe the lease. The phrase, "the above described real estate," in the option refers to the entire tract and not to only the second floor. This intent is obvious from the instrument. Even if defendants had not so construed the instrument themselves, it would strain credulity to believe any one would agree to pay $22,000 for a second floor of a building renting for $360 per year.

Defendants have continuously recognized the rights of the assignee to the lease of the property, and they concede that the lease is valid for a term of 10 years. The defendants had the right to elect to forfeit the lease upon the assignments, but they did not elect to do so. Instead, they accepted the benefits of the original lease for 8 years, receiving the annual rental payment from two different assignees. They permitted the assignees to make extensive improvements to the second floor of the building, and could not help but realize that because

of the improvements there was a reasonable likelihood that the option would be exercised. Where the rights of an assignee of a lease have been recognized by a lessor notwithstanding prohibition against assignment of the lease, and no forfeiture of the lease for the lessee's breach of covenant or condition has been declared during the term thereof, the assignee may exercise the option given the lessee by the lease to purchase the leased property. Chesnut v. Master Laboratories, 148 Neb. 378, 27 N. W. 2d 541.

We have referred previously to the construction placed upon the lease by the defendants. It is evident that when the present title holder leased the ground floor and basement of the premises in question to Rex Haberman, she believed there was a good possibility that plaintiff would exercise the option. In this respect, it is also to be noted that if the option was limited only to the second floor, the provision in the lease would have been unnecessary, but that other definite provisions covering the problems of a divided ownership would have been considered.

For the reasons given, we reverse the judgment herein and remand the cause with directions to grant the plaintiff's petition for specific performance.

REVERSED AND REMANDED WITH DIRECTIONS.