SMITH, et ux, Respondents v. HEGG, et ux, Appellants

(214 N.W.2d 789)

(File No. 11289. Opinion filed February 15, 1974)

Willy, Pruitt, Matthews & Jorgensen, **Gene E. Pruitt** and **Steve Jorgensen**, Sioux Falls, for defendants and appellants.

Jorgenson & Erickson, **Larry L. Jorgenson** and **Lewayne M. Erickson**, Brookings, for plaintiffs and respondents.

WINANS, Justice.

In March of 1966 Elmer and Bonnie Cummings, as lessors, entered into a lease with Leo and Glen Ward for the rental of a building, which is the subject of this litigation, for a term of years from March 16, 1966 to July 31, 1974. A provision of this lease provided that there could be no assignment without the written consent of the lessors Cummings. This lease was recorded with the Register of Deeds.

On October 1, 1966 the Plaintiffs, Robert and Alice Smith, entered into a conditional sales contract with the above lessees, Leo and Glen Ward, for the purchase of "The College Inn" restaurant business, which the lessees owned. A clause of this contract assigned the lease of the building from the Wards to the Plaintiffs but, contrary to the terms of the lease, no written consent was obtained from the lessors Cummings.

With the possession of the building by the Plaintiffs, they began paying rent to the lessors Cummings, which was received by them without objection to the assignment.

On September 9, 1971 the lessors entered into a contract to sell the subject building to Ernest Irvin. Irvin was then an employee of the real estate brokerage run by the Defendants, P. O. and Margaret Hegg. As a result of this contract, the lessors Cummings first refused to accept the rental paid by Plaintiffs in November of 1971 and they then served notice on the Plaintiffs to Quit and Vacate the subject building.

During this September of 1971 period, the Defendants had actual knowledge, and other information through dealings of their associate Irvin who was attempting to purchase the building, that the Plaintiffs were in possession of and running a restaurant business on the premises. The Defendants also had knowledge that the Plaintiffs were resisting the Quit and Vacate action brought by the Cummingses as a result of the contract to sell to Irvin.

On September 10, 1971 the Plaintiffs sold their restaurant business and removed everything from the subject building except the lighting fixtures and carpeting. The Plaintiffs retained the

keys and possession of the building, though not in physical occupancy, and continued to pay rent to the Cummingses until it was refused in November of 1971.

Upon the dismissal of a specific performance action by Irvin against the Cummingses, Defendants Hegg purchased the subject building on May 15, 1972, which purchase was duly recorded in the Register of Deeds office.

On May 17, 1972 the Defendants acknowledged their previous actual notice of the existence of the possession by the Plaintiffs by bringing an action against the Plaintiffs to Quit and Vacate the premises. Prior to trial on a forcible entry action brought by the Defendants on May 25, 1972, the keys to the subject building were obtained from the attorney of the Plaintiffs under the guise of merely desiring to inspect it. Once in the possession of the keys the Defendants changed all the locks and refused to allow the Plaintiffs access thereto.

As a result of this refusal of access, issue was joined when the Plaintiffs brought an action for Forcible Entry and Detainer against the Defendants on August 14, 1972. Plaintiffs contended that they were possessed of a lawful, effective lease as a result of the assignment from the lessees in the conditional sales contract; that the lessors were estopped to deny the assigned lease because of their receipt of rent and lack of objection thereto; that they had not abandoned and were still in lawful possession of the premises, though not in corporal occupancy; and that they had not breached the lease, because their offers of rent were wrongfully refused or would have been otherwise futile acts.

The trial court, agreeing with the position of the Plaintiffs, ordered that possession of the premises should be delivered to the Plaintiffs. On appeal, the Defendants have assigned the position of the Plaintiffs and trial court as error, thus delineating the issues for review by this Court.

█ The challenge to the validity of the assignment of the lease to Plaintiffs may be easily dealt with. Though this Court will at times enforce covenants in leases against assignment, such restraints against alienation are looked upon with disfavor and

are strictly construed against the lessor. Jamson v. Poulos, 1969, 184 Neb. 480, 168 N.W.2d 526, 529; Baron Bros. Inc. v. National Bank of S.D., Sioux Falls, 1968, 83 S.D. 93, 155 N.W.2d 300, 303. The clause of the lease in question, requiring written consent from the Cummingses before assignment, is thus not solely determinative of this issue. Such clauses are inserted in leases for the benefit of the lessor. Keller v. Henvit, 1945, 219 Minn. 580, 18 N.W.2d 544; First State Bank of Barton v. St. Anthony & Dakota Elevator Co., 1933, 64 N.D. 138, 250 N.W. 778; 49 Am.Jur.2d, Landlord and Tenant, § 421 (1970). As such, the restriction can be waived by the consent of the lessor manifested in either word or conduct. Baker v. McDel Corp., 1971, 53 Wis.2d 71, 191 N.W.2d 846; Jamson v. Poulos, supra; Keller v. Henvit, supra.

The receipt of rent by the lessor, in the face of a restriction against assignment without the lessor's consent, is normally a waiver of such restriction. Jamson v. Poulos, supra; O'Neil v. A. F. Oys & Sons, 1944, 216 Minn. 391, 13 N.W.2d 8; Towle v. Morrell, 1935, 129 Neb. 398, 261 N.W. 827; Cohen v. Todd, 1915, 130 Minn. 227, 153 N.W. 531; 49 Am.Jur.2d, Landlord and Tenant, § 421 (1970).

In the present case the lessors Cummings had actual knowledge that the lease had been assigned to the Plaintiffs. They accepted the $200 monthly rental for approximately five years. At no time during this period did the lessors object to the assignment or seek forfeiture of the lease. By this action the Cummingses waived their right to object to the assignment without their consent. They are, therefore, estopped to deny the existence of the assigned lease, along with its obligations.

The trial court found that the Defendants purchased the subject building with actual knowledge of the leasehold of the Plaintiffs, therefore, prohibiting the defense of purchasers "in good faith" found in SDCL 43-28-17. This decision of the trial court was correct and utilized the principle of law alluded to in Bucholz v. Hinzman, 1921, 44 S.D. 336, 183 N.W. 993, wherein the forerunner of SDCL 43-28-17 was interpreted:

"under it [§ 592, Rev.Code 1919] a person without actual notice, but with knowledge of facts sufficient to

put a prudent person upon inquiry, might be held *not to be* a purchaser or incumbrancer in good faith." (insertion and emphasis added)

In the present case the facts reveal the Defendants had both actual knowledge and information which would have suggested to the prudent mind that further inquiry should be made. Their attack to the contrary is illusory. The Defendants' associate was engaged in litigation which involved the subject premises. They knew the Plaintiffs were resisting an action to Quit and Vacate generated as a result of Irvin's suit and that Plaintiffs were operating a restaurant in the subject building. This factual setting denies the Defendants the "good faith purchaser" defense of SDCL 43-28-17. As purchasers of the real estate, the Defendants, therefore, became bound by the lease.

Contrary to the Defendants' reasoning, mere absence of physical occupancy is not, determinative of a lack of possession which will allow the lessor to retake the premises for abandonment. This is true because use of the leasehold by the lessee cannot normally be restricted. Baron Bros., Inc. v. National Bank of S.D., Sioux Falls, supra; 49 Am.Jur.2d, Landlord and Tenant, §§ 229, 1026 (1970). In the case of Vawter v. McKissick, 1968, Iowa, 159 N.W.2d 538, relied upon by the Defendants, the Court defines abandonment:

"Abandonment as applied to leases involves an absolute relinquishment of the premises by a tenant, and consists of acts or omissions and *an intent to abandon.*" (emphasis added)

Applied in the present case, the Plaintiffs have continued to pay rent even after physically removing their business from the subject building. They have retained the keys and control of the premises. They were not bound to make any specific use of the building. The ability to maintain control over the premises was only taken from the Plaintiffs by the subterfuge of the Defendants' false claim that they merely wanted to inspect the building. These things solidify the Plaintiffs' claim that they intended to keep the lease and refute any relinquishment thereof. Though the Plaintiffs paid no rent to the Defendants, after the Defendants instigated their action to Quit and Vacate against Plaintiffs,

subsequent to the purchase of the building, such a tender of rent would have been a futile act not required of the Plaintiffs.

It is obvious that the position of the Defendants that SDCL 21-16-1 forbids the Plaintiffs' action for "Forcible Entry and Detainer", because of a lack of "prior and actual possession," is without merit. Possession is a term of varying characteristics which takes its meaning from within the context of both common language and the legal argot. It is used to mean both actual possession and constructive possession and extends from actual physical occupancy to the legal right to possess, exercised without corporal presence.

Applied here, the Plaintiffs were in "actual possession" of the leasehold, though not physically located therein. As previously explained, the lessees did not have to physically occupy the building. Apart from the question of waste, such lack of physical occupancy does not mean the premises are not in the "actual possession" of the tenant. Respecting the mere lack of corporal presence, the landlord can find no comfort therein to vest in him the right to automatically retake the premises. Continued payment of rent by the Plaintiffs, retention of the keys without objection and exercise of control over the building, coupled with the intention not to abandon, all solidify the Plaintiffs' "actual possession" within the meaning of SDCL 21-16-1. As such, the Plaintiffs' action for Forcible Entry and Detainer was properly upheld by the trial court.

The final contention of the Defendants, that the Plaintiffs have violated the terms of the lease by subletting and refusal to pay rent, are also unmeritorious. We have held that subletting does not violate a restriction against assignment. Baron Bros., Inc. v. National Bank of S.D., Sioux Falls, supra. This is still the law. The failure to further tender rent has already been explained to have required a futile act from the Plaintiffs because of the actions of the lessors in refusing to accept it and those of the Defendants in their Quit and Vacate action. In this respect, no breach can be found in the Plaintiffs' conduct.

The ruling of the trial court allowing the Plaintiffs possession of the subject property was correct and is, hereby, affirmed.

All the Justices concur.