# CASES

ARGUED AND DETERMINED IN THE

# SUPREME COURT

OF THE

# STATE OF WISCONSIN.

HENRY BRUGMAN, Appellee,

*vs.*

WILLIAM A. NOYES, *et als.* Appellants.

APPEAL IN EQUITY FROM THE MILWAUKEE CIRCUIT COURT.

The words—" to be used as Cabinet ware rooms"—following the description of the premises in a lease for years, do not imply a covenant on the part of the lessee not to use the premises for any other purposes than as cabinet ware rooms.
Equity will not raise an implied covenant in restraint of a beneficial use of property.

On the 13th of February 1854, the complainant and August Flertzheim took a lease from one Fowler, the owner of the tenement No. 221 East Water street, Milwaukee, for the term of three years and two and one half months from that date, "*to be used as cabinet ware rooms.*" Upon which premises, by way of an addition and enlargement, complainant expended about a thousand dollars, and took an assignment from said Flertzheim of his interest, and so became the sole owner of the lease from Fowler, which had been enlarged in the meantime by a supplemental agreement with Fowler, by which the entire term of said lease was extended to seven years, two and a half months from said 13th day of February 1854. Said complainant and Flertzheim were partners in the cabinet ware business, and occupied the demised premises in the prosecution of

Brugman vs. Noyes et als.

said business; and subsequently took into their said firm the defendant Noyes, adopting the style for the new firm of Noyes, Flertzheim & Co. To which firm, complainant, on the 26th day of July 1854, executed a written lease of the said premises for the term of six years and six months from the first day of September 1854, at an annual rent of seven hundred and sixty dollars, "*to be used as cabinet ware rooms.*" This lease, as well as that from Fowler, contained a clause expressly forbidding the manufacturing of cabinet ware upon the premises.

Subsequently, complainant sold out his interest in the firm of Noyes, Flertzheim & Co. to defendant, Kimball, and the new firm removed their business from the leased premises, and transferred possession of said leased premises to defendants, Berliner & Bruno, who continue to hold possession, and to occupy, and threaten to continue to occupy the same as a store or shop for the sale of cigars, iron safes, eggs, dried apples, &c., and not as cabinet ware rooms.

Deeming this use and occupancy of the premises a violation and forfeiture of the terms of the lease, the complainant brought his bill in Equity, alleging the above facts, as well as an informal promise on the part of Noyes, Flertzheim & Co. to use the premises only as cabinet ware rooms; and that when that firm should leave the premises, complainant should have possession and control over the same—charging that the use of said premises by Berliner & Bruno for the purposes, and in the manner aforesaid, and the refusal of the defendants to give up the possession of the same to complainants, occasion him great pecuniary damage, and praying compensation therefor against the defendants, and for possession of the premises to be decreed to him; or at least that Berliner & Bruno may cease to use the premises for any other purposes than "as cabinet ware rooms," &c.

To this bill the defendants demurred, and the circuit court overruled the demurrer, and ordered defendants to answer. From which order all the defendants appealed.

*E. G. Ryan,* for appellants.

The Bill states that Fowler, the complainant's lessor, demised the premises for such a term, expressly "to be used as cabinet ware rooms." And states that the complainant's lease to himself, Noyes & Flertzheim, demised the premises for such a term, and at such a rent, expressly "to be used as cabinet ware rooms." We have no other light from the bill how, or in what part, either lease uses those words : "to be used as cabinet ware rooms."

It must be intended, therefore, that there is not in either lease, any covenant against using the premises for other purposes ; and it seems a fair presumption that the words, like those in the case in 4th Sandford, follow in the description of the premises, before the *haben dum*. This is the truth in fact, and seems fairly to be derived from the bill.

Judge Randall based the decree in the court below, against his own judgment *aliunde*, on the authority of *Steward* vs. *Winters*, 4 Sandford C. R. 587.

That case seems, on first impression, to be in point. But where the whole doctrines of equity are against it, it is submitted that little weight is to be given to the decision of a Vice Chancellor's court in New York.

The Circuit courts were Vice Chancellors' courts in that State, under the old system. It is true that in the City of New York, on account of the extent of business, Vice Chancellors were appointed other than the Circuit Judge, but only of the same jurisdiction and authority. And until New York recognizes and acts upon the decisions of our Circuit courts, it is submitted that we should attach no decisive weight to their circuit decisions.

But *Steward* vs. *Winters* is not sustained by authority, and is not in point.

I. It is not in point. That case goes upon the ground that the words used after the description of the premises imply a covenant.

But in this State we have no implied covenants in conveyances of real estate. Rev. Stat., 326, § 5.

A lease is a conveyance of real estate within the meaning

of that Statute. 1 Black. Com., Bk. 2, 309, 310; 2 Green-leaf's Cruise, vol. 4, 45, 46.

The words set up in the Bill, and upon which the Complainant's equity rests, cannot be taken as an express covenant, because they are not in the form, direct or indirect, of an agreement, and are not supported by any other clause in the instrument amounting, with them, to an agreement. They could, therefore, only operate at Common Law, if at all, as an implied covenant. Platt on Cov., 40. 1 Law Lib.

AGAIN: *Steward* vs. *Winters* assumes an implied covenant. It is submitted that, even at Common Law, the words here relied on would not raise an implied covenant.

Merely directory or positive words are not held, in statutes or charters, to operate by way of restraint. A restraint must be raised by negative words.

In *Steward* vs. *Winters* there were negative words of restraint: "and for no other kind of business." Here are no such words.

AGAIN: the bill discloses that in both leases there were express restraining clauses, that "no cabinet ware be manufactured in the building."

The rule, *expressio unius est exclusio alterius*, applies.

"An implied covenant is in all cases controlled within the limits of an express covenant." Broom's Leg. Max., 505; Rawle on Cov. for Title, 478, 483; Platt on Cov., 381, 382; 2 Greenleaf's Cruise, vol. 4, 370.

Courts do not favor restraints upon the beneficial enjoyment of property; and surely this Court will not, without words of restraint, imply a restraint, when there is an express restraint in *pari materia*.

Where the lease says the premises are "to be used as cabinet warerooms," expressly restrains the manufacture of cabinet ware on the premises, and uses no word of restraint of any other use of the premises, the fair inference is that no such restraint of other use was intended.

*Macher* vs. *The Foundling Hospital*, 1 Vesey and Beames,

cited in the court below, is not in point. That case went upon an express covenant.

*Lovering* vs. *Lovering*, 13 N. H. 513, was also cited below; but that case also went upon an express covenant.

II. The rule of decision in *Steward* vs. *Winters*, is not sustained by principle or authority.

Courts of equity will undoubtedly interfere by injunction and decree to restrain continuing breaches of covenant in proper cases.

But no case has been found, except *Steward* vs. *Winters*, where a court of equity has gone upon an implied covenant in restraint of a beneficial use of premises. *Macher* vs. *the Foundling Hospital*, 1 Ves. & B., 188; *Hills* vs. *Miller*, 3 Paige, 254; *Barron* vs. *Richard*, 8 Paige, 351; *Barrett* vs. *Blagrave*, 5 Ves. 555, and 6 Ves. 106; *Ranklin* vs. *Huskison*, 4 Simons, 13; *Wilton* vs. *Saxon*, 6 Ves. 106; are the only cases cited to sustain the decree in *Steward* vs. *Winters*, and were all cases going upon express covenants.

Implied covenants are not favored, even at law, and are always regarded more strictly against the covenantee than express covenants. 2 Greenleaf's Cruise, vol. 4, 369; Platt on Cov. 40.

Even express covenants in restraint of use, are jealously taken, and strictly construed by courts of law. Platt on Cov. 404, 405, 406.

And it may well be doubted whether even a court of law would imply a covenant in restraint of beneficial use. See 2 Greenleaf's Cruise, vol. 4, 270, 272.

*A fortiori* courts of equity, in exercising this branch of jurisdiction, will lean against an express covenant of this kind, and not act upon an implied one.

The whole genius of equity jurisprudence leans against enforcing anything in the nature of a forfeiture. A forfeiture operates as a restraint of all uses; a restraint of a particular beneficial use, is therefore a partial forfeiture.

And it is to be noticed, in this connection, that this bill prays an absolute forfeiture.

III. It is submitted that if there be here a covenant, express or implied, it is to be considered as lapsed by want of interest in the covenantee.

It is not alleged that the complainant's lessor complains of the change of use. The bill rests the case exclusively on the interest of the complainant in the premises.

He shows a reversion of about two months after the expiration of a lease of nearly seven years. *De minimis non curat lex.* This is not such an interest as a court of equity will act upon, to restrain a beneficial use for more than twice as many years.

This jurisdiction is exercised upon the ground of specific performance. Barret vs. Blagrave, 5 Vesey 555, 6 Vesey 104.

Specific performance is not necessarily decreed; but only in a case of plain equity. A hardship is never decreed to be specifically performed.

And this bill does pray a decree of a gross hardship, wholly disproportioned to the complainants's interest.

All the allegations of the bill of the complainant's desire to build up a business are immaterial and negatived by the statement of his own title in the premises.

In this connection it is observable that as the clause in the leases relied on are affirmative and not negative, specific performance should be affirmative likewise and not negative.

And a question put by the Court below, on the argument, seems to have great weight. Judge Randall put it in this light. " Suppose Noyes, Flertzheim & Co. had not given any possession to Berliner & Bruno, but had simply removed and shut up the premises, could you file a bill to compel them to use the premises as cabinet warerooms ?"

AGAIN : this is another view in which the covenant here assumed may well be regarded as lapsed.

When the lease under which the defendants claim was executed, the complainant was the partner of Noyes & Flertzheim in the cabinet business. He made the lease to himself and them ; and in following the description of the premises by the words " to be used," &c., may it not well be intended that

this was by way of declaration, for mutual protection, of the intent that the premises were to be used for the purposes of the co-partnership business? While in the firm the complainant had that interest. When he sold out, that interest lapsed.

IV. Certain alleged parol understandings between the parties are set up in the bill. It is submitted that these cannot seriously enter into the consideration of a remedy claimed upon a written instrument under seal.

V. It is submitted that the prayer for relief is so uncertain and inconsistent, that the bill ought to be dismissed.

1st. Damages, which equity never decrees but as an incident.

2nd. Surrender of the premises to complainant.

3rd. " Or at least" that they may be used only as cabinet ware rooms.

4th. General relief in the conjunctive, which will not aid a mistaken prayer for specific relief.

On the whole, it is submitted that the demurrer to the bill was well taken.

*Waldo and Ody*, for appellee.


I. It is a fundamental rule of property that a *man may do what he will with his own*, so that he avoid infringing upon any legal right of any other. He may contract as he will, respecting his estate, or part with it, or with any part of it, with such legal conditions and for such legal purposes as he chooses, and it does not lie in the mouth of any other to say that he hath not the wisest reasons for making the contracts, fixing the conditions, or pursuing the purposes that he does. If an owner of land, lease the premises for a term of years, expressly and exclusively to be used for a particular business, the lessee cannot use them for any other, and it is not necessary to show that the lessor hath suffered any substantial injury from a breach of the terms of the lease in that particular to entitle him to relief by injunction. 3 Paige, 254 ; *Hills* vs. *Mil-*

*ler, Barrow* vs. *Richard,* 8 Paige, 351; *Steward* vs. *Winters,* 4 Sandf. Chy. R. 587.

II. Injunction is a proper remedy in such cases. See cases above cited, also 2 Story Eq. Juris. § 717, 901, 928, 9, 30, 31, 35; Eden on Inj., 239; 4 Paige, 510; 4 Simons, 13; 1 Ves. & B., 188; 6 Ves., 106.

III. In an *agreement by two parties* any words showing the intention of the contracting parties amount to a covenant. *Pordage* vs. *Cole,* 1 Saund., 319; 12 East, 179; 16 Id., 352; *Shrewsbury* vs. *Gould,* 2 B. & A. 487; *Webb* vs. *Plumer,* 2 Id., 476; 2 J. R., 44; 5 Cow., 170; 8 B. & C., 160.

IV. The clause in the lease " to be used as cabinet ware rooms" under, &c.,—the lease being executed by both parties —amounts to a direct covenant not to use the premises for any other purpose. *Expressio unius,* &c. Co. Lit., 210; Broom's Maxims, 278; Parson's Law of Contracts.

V. Cotemporaneous acts and circumstances may show the intent. Broom's Maxims, 420; 2d My. & Cr. 202, *Loyd* vs: *Loyd ;* Powell on Contracts, 232; Bacon's Max., 71; Eden on Inj. 239.

If I let to " A" a tenement near my house with the restriction that he is not to keep any shop in it, and (he being a miller or a tailor at the time) I afterwards consent that he put a shop in it, he cannot put in it a tin shop, or carpenter's shop, or blacksmith's shop.

AGAIN; if I hire a horse " to be used as a carriage horse," I could not use him for towing a boat, nor even as a saddle horse, since the owner has a clear right to decide as to what use he shall be put to.

ONCE MORE : if I insure a vessel on a voyage to Madeira and back, and she turn aside to make a voyage to Rio, and is burned or wrecked, the policy is void—for though the latter voyage may not be in general more perilous than the former, and I would have insured for the one as readily and as cheaply as for the other, still the contract is broken, the condition of the policy is violated and the owner shall not hold me. It shall not lie in his mouth to say that I am in no way injured by his

election between two trips of equal peril, since I would have taken one risk as readily as the other,—nor yet this—that the contract (policy) does not contain any express proviso or stipulation that he would not go upon any other voyage than the one specified. It is enough that one voyage is expressly mentioned, and upon that the law implies the exclusion of all others.

VI. The complainant could not create a greater estate than was given to him. Taylor, L. and T., 175.

The covenant binds also the assignee. 4 Kent, 473 ; Platt on leases § 229, 351.

VII. The Court may give us damages, as incident to the principle relief sought. Story Eq. Juris. 794–9 ; Parsons' Select Eq. Cases, p. 219, B'k of K'y vs. Schuylkill Bank.

VIII. The complainant hath a large interest in the premises and in the relief sought, and is by no means an indifferent middle man.

1. He hath a reversionary interest, or an unexpired term in expectancy in the premises after the termination of the lease to Noyes, Flertzheim & Co.

2d. He hath a still larger interest from the fact that he hath an agreement for a further lease from Fowler after May 1st, 1860, which will be more valuable to him if the premises be confined to the use for which they were leased, but valueless otherwise.

3d. He hath a further and more immediate interest in restricting the premises to the use for which they were let by him, from the existence of a similar provision in his lease from Fowler, by reason of which he must enforce the restriction to avoid forfeiture to Fowler to arise from a breach of the first lease. Any negligence or delay in enforcing the restriction, might, at the option of Fowler, destroy his entire estate.

*By the Court*, Cole J. This bill was filed to obtain an injunction restraining the defendants, or any of them, from using

certain buildings in Milwaukee as a store or shop for the retail of cigars, iron safes, eggs, dried apples, &c.; and to compel them to use the buildings for cabinet warerooms, or to deliver up the possession of the buildings to the complainant. The complainant has a reversionary interest in the premises of some two or three months after the expiration of his lease to Noyes, Flertzheim & Co., which latter lease expires 1st of November, 1861. The foundation for the bill, is a clause in the lease from complainant to Noyes, Flertzheim & Co., that the buildings were "to be used as cabinet warerooms;" and the same clause is in the lease from the owner of the buildings, Fowler, to the complainant. The complainant insists that this clause in the lease is a covenant absolutely restraining his lessee from using the buildings except for cabinet warerooms; and that using them as a store for retailing of cigars, iron safes, &c., is a breach of this covenant, and works a forfeiture of the estate. He alleges that he suffers great pecuniary loss in the premises by reason of the breach of this covenant to use them as cabinet warerooms, and prays that the defendants be compelled, by a decree of court to give possession of the premises to him, or at least to use and occupy the same only as, and for, cabinet warerooms; the purpose for which they were leased to the defendants. The defendants below and appellants here, filed separate demurrers to the bill assigning several grounds of demurrer. The demurrers were overruled by the Circuit court, and the order overruling the demurrers is the matter now before us for review. Can this order of the Circuit court overruling the demurrers to the complainant's bill be sustained? We are of the opinion that it cannot. It will not be doubted that the landlord having the *jus disponendi* may annex whatever conditions he pleased to his grant, provided they be neither contrary to law, nor the principle of reason or public policy. These general maxims are not gainsayed or denied by the counsel who supports the demurrers. He insists, however, that there is no express covenant in the lease restraining the use of the premises to cabinet warerooms, and that a court of equity will not imply a covenant in restraint of a beneficial

use of property. This argument strikes us as sound and conclusive against the right of the complainant to maintain his bill. If the complainant had leased the premises expressly and exclusively to be used for a particular business, or in a particular manner, and there was a continuing breach or disregard of the stipulation, a court of equity would perhaps interfere and enforce the restriction by compelling the lessees to use them for their business. Hills vs. Miller, 3 Paige, 254; Barrow vs. Richard et al, 8 Id. 351; Macher vs. The Foundling Hospital, 1. V. & B. 187; Lathrop vs. Marsh, 5 Ves. Jun. 259; Rankin vs. Huskinson, 4 Simmons, 7; Lord Gray de Wilton vs. Saxon, 6 Ves. 106; Steward vs. Winters and Jaynes, 4 Sand. Chy. R., 387. The insuperable difficulty in this case is, that there is no express covenant not to use the buildings except for cabinet warerooms. The clause in the lease is that the buildings were to be used as cabinet warerooms, without words of restriction. It appears that there is another clause in the lease that no cabinet ware should be manufactured in the buildings; and probably this express prohibition would have been enforced had the lessee entered upon the business of manufacturing cabinet ware. The counsel for the complainant contends that the clause in the lease that the premises were to be used as cabinet warerooms, amounts to a direct covenant to use them as such, and for no other purpose whatever. We are unable to concur in this construction of the lease. Of course the intention of the parties, as that intention is gathered from the whole lease, must control in the case. And looking at the language of this clause, as well as of other clauses, as disclosed in the bill, we do not feel authorized in saying that the sense and meaning of the words employed, show that it was the intention of the parties to restrict the use of the buildings to cabinet warerooms, and prohibit the use of them for any other purpose. We think such a construction is forced, and ought not to be adopted. As already observed, there is an express covenant against manufacturing cabinet ware in the buildings, and it seems but fair to presume, that if the parties intended restraining the use thereof to cabinet warerooms they

would have distinctly and expressly stipulated to that effect. It is obviously inconsistent with the principles upon which courts of equity act, to raise by implication a covenant in restraint of a beneficial use of property. The business of selling cigars, safes, &c., is certainly a most innocent branch of trade, not more likely to disturb the adjoining tenants than occupying the buildings as cabinet warerooms; and not in any wise objectionable for injuring the buildings, or increasing the insurance upon them. All the advantages that the complainant would derive from their being occupied and used as cabinet warerooms, would be the good will of an established business in that line there. And if he can compel the defendants to change their trade from selling cigars and safes to selling cabinet ware, it appears to us he could compel them to use them as cabinet warerooms even if they should desire to remove from the buildings and shut them up. We apprehend a court of equity would pause before exercising such a jurisdiction as to compel the defendants to occupy the premises as cabinet warerooms, when they desired to close them. In the case of Hooper vs. Broderick, 11 Simons, 47, the defendant was an assignee of a lease of the Cross Keys Inn in St. John street, Clerkenwell, which the plaintiff had granted and which contained a covenant on the part of the lessee, his executors, administrators and assigns, to use and keep open the demised premises during the term as an Inn; provided the proper licences for that purpose could be obtained; and to use his best endeavors to procure the licence to be renewed from time to time; and not to do or cause, or permit to be done, any act whereby they might become forfeited or be refused. The inn proved a losing concern and the defendant having threatened to do certain acts inconsistent with the first branch of the covenant, the plaintiff filed a bill, and obtained *exparte* an injuction restraining the defendant from discontinuing during the term, to use and keep open the premises as an inn, or to renew the licenses from time to time, provided they could be obtained. On motion to dissolve the injunction the Vice Chancellor said; "The court ought not to have restrained the defendant from

discontinuing to use and keep open the demised premises as an inn; which is the same in effect as ordering him to carry on the business of an innkeeper." See cases of Blackmore vs. The Glamorganshire Canal Co., 1 Myl. & Keen, 154; Earl of Ripon et al, vs. Hobart et al, 3 Id. 169; Robinson vs. Lord Byron, 1 Bro. C. C., 588; Lane vs. Newdigate, 10 Ves., 192; 2 Platt on Leases, 234.

The strongest authority to which we have been referred to sustain the complainant's right to file his bill, is that of Stewart vs. Winters, before cited. This case, it must be admitted, goes to the uttermost verge, if it does not conflict with the authorities cited herein, and still it appears to fall short of the principles contended for at bar, and to be clearly distinguishable from it. In Stewart vs. Winters the lease contained the stipulation that the store should be occupied for the regular dry gods jobbing business, *and for no other kind of business.* The lessee attempted to carry on in the store the business of an auctioneer to the annoyance of the tenants of the lessor in the adjoining buildings. The Vice Chancellor denied a motion to dissolve an injunction restraining the defendants from carrying on that business. He stated that he had no doubt that the business of selling goods at auction was prohibited by the terms of the covenant of the lease, and that the lessee knew perfectly well that the lessor intended to exclude the auction business. Had the lease in the case under consideration contained an express stipulation that the demised premises should be used as cabinet warerooms *and for no other purposes*, the cases would have been similar. The rule in the case of Stewart vs. Winters may well stand without establishing the right of the complainant to maintain this suit.

From the view we have taken of the case it becomes unnecessary to examine other questions discussed by counsel and presented for our consideration. The order of the Circuit court must be reversed with costs, and the bill dismissed.