CARBON FUEL COMPANY

*v.*

OLIVER GREGORY

(No. 10007)

Submitted April 6, 1948. Decided June 8, 1948.

*Jackson, Kelly, Morrison & Moxley, William J. Carter,* and *Frank R. Lyon, Jr.,* for plaintiff in error.

*Willard L. Brown,* for defendant in error.

FOX, JUDGE:

On the 5th day of April, 1947, the Carbon Fuel Company, a corporation, instituted its action of unlawful detainer, in the Court of Common Pleas of Kanawha County, against Oliver Gregory, seeking to recover the possession of a certain frame dwelling house, designated as house number 371, formerly designated as house number 95, the property of the plaintiff, situated at Carbon, in Kanawha County. A jury trial of the said action was had in the said court, and resulted in a verdict and judgment in favor of the defendant. A motion was made to set aside the ver-

dict and grant a new trial and was overruled, and a writ of error and supersedeas to said judgment was refused by the Circuit Court of said county on September 11, 1947. On October 20, 1947, on petition of the plaintiff, we granted this writ of error.

The facts are simple and are not in dispute. The record discloses that on November 3, 1942, the Carbon Fuel Company leased to Oliver Gregory, as an incident of his employment as a miner, and in connection with plaintiff's coal operation, a certain tenement house, then known as number 95, upon the premises of the plaintiff, and at a rental of $10.50 per month. It was provided in the lease that same might be terminated at any time, by either party, by giving to the other five days notice of the intent to terminate the same. But, it seems to be conceded by all concerned that the enactment of the Federal Rent Control Act nullified, in effect, this five day provision, and that the right to terminate on the part of the landlord could only be invoked for cause. The lease also contains this provision: "It being understood that said premises are intended solely for the occupancy of employees of the party of the first part, and that the proper conduct of the business of the party of the first part requires that none but his employees and their families shall occupy the same." There is no provision in the lease which specifically limits the use of the leased premises. The lessee is given the right to occupy the premises, and his right to occupy is made dependent on his continuing as an employee of the lessor.

The lessee, the defendant herein, continued to occupy said premises until the 12th of March, 1947, on which date the Carbon Fuel Company, the lessor, plaintiff herein, wrote to the lessee as follows: "It has been brought to my attention that you are selling ice cream and other items in and about your house. This house was leased to you for tenement purposes only and you are, hereby, notified to discontinue the above selling of merchandise of any nature." The lessee replied to this letter on March 17, to which, on the same date, the lessor made

his reply insisting on the discontinuance of the activities referred to in its first letter. On March 22, the lessee again wrote to the lessor insisting upon his right to sell ice cream, whereupon, on March 26, 1947, the lessor notified the lessee to vacate the said premises on or before April 3, 1947 "for the reason that you have violated a substantial obligation of your tenancy, as provided in Section 6 (a) (3) (i) of the Rent Regulation for Housing pursuant to which this notice is given." A copy of this notice was submitted to the rent control authorities and a clearance order was issued, and on March 28, 1947 the lessor was advised that upon the completion of a form, furnished the lessor, what is known as a clearance to the Justice of the Peace, would be issued. This was done on April 15, 1947, previous to which date the plaintiff had instituted this action of unlawful detainer.

On the trial of the case, the plaintiff offered three instructions: (1) a peremptory instruction to find for the plaintiff; (2) an instruction which would have told a jury that the selling of ice cream or other items of merchandise in the leased premises would amount to a violation of the tenancy of the lease, and that if the jury believed lessee was selling ice cream or other merchandise, on the leased premises the verdict should be for the plaintiff. These instructions were refused. Plaintiff's third instruction was that "The Court instructs the jury that if you believe from a preponderance of the evidence that the defendant, in selling ice cream in his dwelling house, was violating an obligation of his tenancy, then your verdict should be for the plaintiff for the possession of said dwelling house, and you should further assess the damages of the plaintiff in the amount of $17.30." This instruction was given. The defendant offered one instruction, which the court gave, and which reads as follows: "The Court instructs the jury that the burden is upon the plaintiff to prove to the jury that the defendant has violated an obligation of tenancy by selling ice cream in his home, and if they believe from the evidence that the lease has not been violated, then they shall find for the defendant."

In addition to the instructions offered by the litigants, the court, on its own motion, gave the following instruction: "The Court instructs the jury that under the terms of the rental contract between the plaintiff and the defendant, the plaintiff would have a right to recover the possession of the premises described in the summons in this case merely by serving five days' written notice to terminate the tenancy upon the defendant without regard for the reason for terminating the tenancy if the Federal OPA Rental Regulations were not in effect; but since the premises sought to be recovered are under said Regulations and an OPA clearance is necessary to be obtained by the plaintiff before it can institute an action to recover them, it becomes necessary, in order that the plaintiff may recover, for it to prove the existence of the grounds constituting the basis for the issuance of such clearance—in this case an alleged violation by the tenant of an obligation of his tenancy; and if the jury believe from a preponderance of the evidence that the defendant did violate an express or implied obligation of his tenancy, then they shall find for the plaintiff, or if they find that he did not violate an express or implied obligation of his tenancy, they shall find for the defendant."

It is obvious that instruction number 3, given in behalf of the plaintiff, defendant's instruction number 1, and the court's instruction, each submitted to the jury the question of whether selling ice cream by the defendant on the leased premises was a violation of the tenancy such as would entitle the lessor to the possession of the leased premises. Plaintiff in error assigns the following errors: (1) The refusal of the court to direct a verdict for the plaintiff; (2) Its action in refusing to give plaintiff's instruction number 1; (3) In refusing to give plaintiff's instruction number 2; (4) In giving defendant's instruction number 1; (5) In giving the instruction prepared by the trial court. On these assignments of error it is contended that the following issues arise: (1) Should the jury or the court have construed the written instrument between the plaintiff and the defendant; (2) Did the defendant violate a substantial obligation of his tenancy.

On the first issue, we are of the opinion that the case was clearly one where the court should have construed and interpreted the effect of the lease agreement, and whether, under the lease, the tenant was justified in carrying on the business of selling ice cream, which was made the grounds of lessor's complaint. The fact that the lessee did sell ice cream on the leased premises was admitted. Therefore, there was nothing for the jury to determine except the question of law, namely, whether the lease should be interpreted to permit such practices. It is the province of the court, not of the jury, to interpret a written contract. *Franklin* v. *Lumber Company,* 66 W. Va. 164, 66 S. E. 225; *Stephens* v. *Bartlett,* 118 W. Va. 421, 191 S. E. 550. See also Thompson on Real Property, Permanent Edition, Section 1110. We know of no authority in conflict with this statement of the law, and we think the trial court was clearly in error in submitting the case to the jury.

But, for reasons hereinafter stated, we think this error was harmless. If we now construe the lease as not, by implication or otherwise, prohibiting the action of the defendant, lessee, in selling ice cream, then it matters not whether that judgment is made effective by the direct action of the court in directing a verdict, or in allowing the question to be submitted to a jury on instruction, and in sustaining a verdict in defendant's favor, returned by the jury. No good purpose would be served by reversing the judgment and granting a new trial, if on such new trial the same result would be reached by the direct action of the court without the use of a jury.

The sole question here presented is the interpretation to be given to the lease under which the lessee occupies the tenement involved. There is nothing in the lease which, in direct terms, places any restrictions whatever upon the use of the leased premises. Under settled law, the lease should be construed most strongly against the lessor, who, it is assumed, prepared the same, and who had it in its power to incorporate therein restrictions on the use of the leased premises and failed to do so. The general

rule is that "A lessee of real property is entitled to the exclusive use of the demised premises for any purpose not prohibited by the lease, not amounting to waste or destruction of the subject matter.", and "Where doubt exists as to the meaning of lease restrictions as to the use of property, such provisions are to be resolved in favor of lessee and against lessor." *Oakwood Smokeless Coal Corporation* v. *Meadows,* 184 Va. 168, 34 S. E. 2d 392. The case in which these holdings were made was not one involving the tenancy of residence property, but we know of no reason why the general rule there announced should not be applied to the case at bar. We can well understand why a coal mining company, furnishing houses for its employees, should contemplate that its tenants would use such houses for residence only; but this supposition on the part of the mining company is, in our opinion, insufficient on which to base a positive restriction of the use of such premises for other than residential purposes. In our opinion, we are not justified in giving to it a different meaning than that expressed by the lease itself, unless upon some clear implication to the contrary, which we think does not exist in this case. The Court is not unaware of the possible misuse of our ruling, and, even at the risk of being illogical, does not mean to foreclose its right to distinguish the situation here presented from cases where the tenant of residential property, is making a very substantial or predominant use of the property for other than residential purposes. And, of course, the owner of such property may, by contract, limit its use to residential purposes alone.

The judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*