**GENERAL TELERADIO, Inc. (YANKEE NETWORK DIVISION),**

v.

**MOUNT WASHINGTON SUMMIT HOUSE, Inc., et al.**

Civ. A. No. 882.

United States District Court
D. New Hampshire.

Oct. 5, 1953.

John P. Poor, Boston, Mass., Sullivan & Wynot, Edward D. Wynot, Manchester, N. H., for plaintiff.

John R. McLane and John P. Carleton, Manchester, N. H., for defendant Mt. Washington House.

Sulloway, Jones, Hollis & Godfrey, Concord, N. H., for defendant Smith, Hinchman & Grylls.

CONNOR, District Judge.

This action, filed pursuant to Title 28, U.S.C. § 2201, came on to be heard on plaintiff's motion for separate trial under Rule 42(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., on the issue of whether the first sentence of paragraph 2 of a certain lease, hereinafter set forth, constitutes a negative covenant restricting the uses of the demised premises to those specified in said sentence, as contended by the defendant lessor, Mount Washington Summit House, Inc., or is merely a non-exclusive statement of permissive uses, as contended by the plaintiff lessee. Upon hearing, neither defendant opposed allowance, and the court, being of the view that the convenience of all would be served, ordered separate trial.

The facts, insofar as relevant to this issue, are as follows:

On June 7, 1944, the plaintiff and the defendant lessor entered into a written

lease of certain premises of the lessor on the summit of Mt. Washington. This lease provided for an original term of six years and four successive extensions, at the option of the plaintiff lessee, of fifteen years each, a total maximum term of sixty-six years.

The lease in question provides in part as follows:

"And the Lessee hereby covenants and agrees to and with the Lessor that, during the term of this lease and for such further time as the Lessee shall hold or occupy the said premises or any part thereof:

\* \* \* \* \* \*

"2. The Lessee will use the leased premises for aural and visual broadcasting and receiving and similar uses, including scientific experiments and development in similar fields. No admission fee shall be charged for entrance to the leased premises. The Lessee will not use the leased premises so as to compete in any manner with the business of the present hotel on the Summit of Mount Washington, including its dining room, shelter, gift shop, post office and garage."

Paragraph 7 is as follows:

"7. The Lessor covenants and agrees that during the term of this lease and any extension hereof, it will not permit any of the Lessor's remaining land on Mount Washington, or other land thereon which may be acquired by the Lessor, to be occupied or used as a radio broadcasting station or for any other use permitted to the Lessee by the terms of this lease."

The lease contained no restrictions upon assignment or subletting, and the plaintiff entered into a sublease, later amended in its entirety on July 1, 1949, with the defendant Smith, Hinchman & Grylls, Inc. for use of the premises for experiments to be carried on by it for the United States Air Force.

It is the claim of the lessor that this project is a violation by the lessee through its sublessee of the provisions and conditions of paragraph 2 of the original lease relating to the use to be made of the premises, and that such violation constitutes a forfeiture of the leasehold.

The plaintiff denies that such use is prohibited thereunder, and contends that the disputed paragraph is but an affirmative statement of permissive uses.

The plaintiff and the defendant Smith, Hinchman & Grylls, Inc. take identical positions upon the sole issue of law before the court, and hence have joined in a single brief.

■ In resolving the question here posed, i. e., whether the disputed paragraph is restrictive or a mere statement of a permitted use, it is well settled that the whole instrument is to be carefully scrutinized in order that the true intention of the parties thereto may be ascertained and their purposes accomplished. Thus in determining this issue, examination is to extend to the remainder of the lease. Boston & M. Railroad v. Suncook Valley Railroad, 94 N.H. 81, 83, 46 A.2d 773. See also, Bovin v. Galitzka, 250 N.Y. 228, 165 N.E. 273; Brugman v. Noyes, 6 Wis. 1.

■ Although restrictions are not to be favored, where they are express or clearly to be implied from the language used, they must be recognized. See Reed v. Lewis, 74 Ind. 433, 39 Am.Rep. 88; Chamberlain v. Brown, 141 Iowa 540, 120 N.W. 334; Mutual Paper Co. v. Hoague-Sprague Corp., 297 Mass. 294, 8 N.E.2d 802; Carbon Fuel Co. v. Gregory, 131 W.Va. 494, 48 S.E.2d 338, 2 A.L.R. 2d 1143; Bovin v. Galitzka, 131 Misc. 479, 226 N.Y.S. 361.

■ In my view the decisive factor in determining the meaning and intent of the disputed paragraph is to be found in that part of the lease wherein is set forth that "the lessee hereby covenants and agrees to and with the lessor \* \* \*." While it is true, as urged by the lessee, that the provisions succeeding paragraph 2 seem to be out of context and continuity with those preceding, it does not

follow that the preamble and the paragraph are unrelated and the meaning destroyed. Though the draftsmanship leaves much to be desired, there is no cause for rejecting that which was obviously intended and accomplished in the drafting of paragraph 2 and the preamble with which it is captioned. Conjunctively considered, a covenant results. Only two possible constructions can be had of this covenant: (1) that the lessee is required under the lease to engage in broadcasting and receiving and kindred uses, including experimentation and research in similar fields; or (2) that the lessee is restricted to use the premises only for the specified purposes. Manifestly, the first proposal cannot be accepted, for there is no logical reason why the lessor would insist that such activity be carried on or that it would in any way benefit thereby. The other alternative remains as the sole explanation of this proviso. The purpose and intent was to limit and restrict the activity of the lessee to aural and visual broadcasting and receiving and similar uses, including scientific experiments and development in similar fields. No other rational explanation appears. The employment of the terms "similar uses" and "scientific experiments and development in similar fields," likely designed to preclude limitation of the primary objectives, is in a measure suggestive of the recognition of the restrictive use.

It is urged that the language following the first sentence of paragraph 2 undertakes to characterize the complete scope of restriction that is imposed upon the lessee. But I find there is no merit to this proposal. The language chosen is qualificative, and only undertakes to limit the term "similar uses." Understandably, the lessor, in order to protect itself from competition with its own activities, which might conceivably arise from those carried on by the plaintiff, invoked this safeguard, and such is harmonious and not meaningless when the entire paragraph is considered.

Supportive of the foregoing conclusions is the significant language of par-

agraph 7, wherein the lessor covenants and agrees that it will not permit any of its remaining land or other land subsequently acquired "to be occupied or used as a radio or broadcasting station or for any other use permitted to the Lessee by the terms of this lease." This is but an additional reason that it was the intention and understanding of the parties that the use of the premises was to be for the purposes defined in paragraph 2 and those alone, and was in a measure a warranty that that activity would be protected from interference insofar as it lay in the power of the lessor so to do.

I am constrained in the light of the foregoing to find and rule that the instrument was intended by the parties to the lease to create an arrangement of use which was limited to the purposes defined and that the activity of the lessee was so restricted.