BARON BROS., INC.

v.

NATIONAL BANK OF SOUTH DAKOTA, SIOUX FALLS

(155 N.W.2d 300)

(File Nos. 10434, 10441.  Opinion filed January 4, 1968)

94

**Davenport, Evans, Hurwitz & Smith,** Sioux Falls, for plaintiff and appellant.

**Woods, Fuller, Shultz & Smith,** Sioux Falls, for defendant and respondent.

BIEGELMEIER, Judge.

Plaintiff lessor brought this action under SDC 1960 Supp. 37.01 for a declaration of rights, status and legal relations of the parties under a written lease with defendant lessee, and for injunctive relief or in the alternative—damages, to which the

defendant filed an answer and counterclaim. The lease for a term extending through December 31, 1972, was dated July 31, 1952 and rented the two lower floors of a 9-story bank and office building, the seven upper floors being used for offices and leased to others than the bank. It appears there was no parking space or space provided for drive-in banking available on the lot. Defendant bank had theretofore rented the property involved to the bank under two separate leases, one of which was with the Baron brothers who were then the owners of the building individually and the other with plaintiff corporation. The current lease superseded these two leases and was entered into after considerable correspondence and negotiations before the other two leases expired. At the time the plaintiff brought the action defendant occupied the premises but was in the process of constructing its own banking building and had notified plaintiff that it expected to move to its new quarters and there was more interchange of correspondence with reference to finding another tenant and other matters. Plaintiff's prayer for relief was cast, therefore, in the light of the facts then existing, but did ask for a declaration that defendant was obligated to occupy and use the premises for its banking and trust business as set out in the provision hereafter quoted "and for no other purpose"; that defendant was precluded during the term of the lease from abandoning and leaving said leased premises vacant and that any assignee or subtenant of defendant was obligated exactly as defendant. It appears that during the pendency of the action and before trial defendant vacated the premises and sublet them to the Sioux Falls Independent School District for use in its adult education program. A provision of the lease upon which plaintiff mainly relies is as follows:

> "Lessee will use the demised premises for the purposes of its banking and trust business and such other and incidental business as shall be lawful."

A further provision is:

> "IT IS FURTHER AGREED that this agreement shall be binding upon the successors and assigns of the parties hereto."

From this the trial court found the lease did not prohibit subletting the premises or assigning the lease.

The court's Judgment which followed its Conclusions of Law adjudged the provision as to use was restrictive and not permissive, and a subtenant was also restricted to the same use of the premises; that the use by the lessee school district was not a use incidental to the banking business and that by executing the sublease and allowing the school district to so use the premises the defendant breached its lease for which plaintiff had a remedy at law; that in the event of substantial or material changes in the leased premises because of vacancy or partial use, the measure of damages would include costs of restoring, but did not include any damage claimed by reason of reduction of the rental value of floors and offices outside the leased premises; that in the event of a breach of provisions in the sublease as to changes or alterations therein mentioned plaintiff did have its remedy at law for damages against the defendant bank, but no such breach could be anticipated at this time and no such action would lie until the end of defendant's term and finally that the lease involved did not compel the continued use of the premises by operation of a bank therein:

At a pretrial conference the trial court ordered the declaration of rights issue be first tried and determined by judgment, and no issue of damages be tried until entry of a judgment and final disposition of an appeal therefrom to the Supreme Court; that in the event the judgment was such as to leave to be determined an issue of damages, it would be thereafter tried. Plaintiff's argument on its appeal is directed to that part of the Judgment denying damages and adjudging the lease did not compel the continued use of the premises by operation of a bank therein. It is largely based on the trial court's failure to proceed to try the issue of damages.

Under the conclusion reached in the final paragraph of the Dakota Block Co. v. Western Casualty & Surety Co., 82 S.D. 546, 150 N.W.2d 729, opinion decided May 12, 1967 after this appeal was taken, the trial court may not have erred in relegating plaintiff to a new action at law on the damage issue. See

also SDC 1960 Supp. 37.0108 and 22 Am.Jur.2d, Declaratory Judgments, § 9. However, plaintiff's appeal also involves a declaration denying the basis for its sole claim of damages and defendant having also appealed claiming error in part of the Judgment, the merits of the conclusions of the trial court are deemed appropriately before this court for determination.

## I.

■ Plaintiff does not claim damages to the property rented to defendant and described in the lease; its only claim of damages is to property owned by plaintiff other than that described in the lease resulting from defendant moving therefrom. That in turn is based on the claim defendant was required to continue to occupy the premises and use it for its banking and trust business. The lease permitted such use but did not require it. In this respect it is much like Dougan v. H. J. Grell Co., 174 Wis. 17, 182 N.W. 350, where the 99-year lease stated " 'Said premises to be used only for the purpose of manufacturing butter and cheese' ". About 25 years later the buildings not having been used for any purpose for over two years, lessor declared the leases at an end and brought an action to declare the lease void and plaintiff owner of building erected on the property by the tenant. Plaintiff contended the quoted clause was an implied covenant to a continuous carrying on of such business. The court rejected this saying it "does not impose upon them the * * * obligation of continuously carry on the specified industry. * * * The lessees' failure therefore to continue such industry was not a breach of any express or implied condition of the lease". The lease in Moore v. Guardian Trust Co., 173 Mo. 218, 73 S.W. 143, required lessor to change four rooms of a building into one room for "a trading room for the Board of Trade". The court said it was "the intention of the Board of Trade to move into the Temple Block and establish its trading rooms there * * * It is also a fact that Jones & Oglebay expected this would be done. But no such obligation, limitation, or restriction was embodied in the lease, and such intentions or expectations do not create any such rights. * * * the lease did not require the board to occupy or so use the building * * * the board had a right * * * not to use

it at all." See other cases in Annotation 46 A.L.R. 1134; 51 C.J.S. Landlord and Tenant § 326, n. 33, 34, p. 1017; 32 Am.Jur., Landlord and Tenant, § 198.

Another provision of the lease lends itself to this conclusion. It provides the name of the building shall not be known or advertised (as it evidently then was) as the name of the lessee bank at the "termination of this lease, or when lessee ceases to occupy said building". The parties thereby recognized the lessee might cease to occupy the building at a time prior to the termination of the lease.

Plaintiff makes no claim defendant bank has breached the lease by failure to pay the rent reserved therein, causing a use of the leased premises for any unlawful purpose or that such premises were damaged by its removal therefrom nor, it may be said, by the assignment to and occupation by the bank's assignee.[1] Plaintiff's complaint is bottomed and relies on its contention, as the prayer for relief sets out, that (a) the bank and its assignee or sublessee is obligated to occupy and use the leased premises for its banking and trust business and such other business as is incidental thereto throughout the full term of the lease (through December 31, 1972) and (b) during that term is precluded from abandoning or leaving the premises vacant. The lease not requiring the bank to occupy the premises, plaintiff was not entitled to such a declaration. It is conceded plaintiff's purpose of commencing this action is not to recover damages by reason of any injury to the premises leased, but is a claim of damages for loss of rentals from other office space in the building. This rested on its claim of the bank's obligation to occupy the leased premises and no such duty existing, the trial court was correct in its Conclusion of Law and Judgment declaring the lease did not compel the continued use of the premises by operation of a bank therein. There being no claim or prayer in the complaint for damages other than that founded on the bank's failure to continue its business therein and as we hold it is not obligated to do so, the trial court did not err in refusing to consider or enter judgment for damages.

---

1. Photographs in evidence show no such damage and indicate the premises are in much the same condition as before the School Board occupied them.

## II.

That disposes of plaintiff's present claim of damage. The trial court's action refusing to consider damages is sustained for another reason and we turn to that because of the defendant bank's appeal. It assigns as error the trial court's Conclusions of Law and Judgment in so far as it declares the quoted use clause as restrictive and that defendant breached it by subleasing to, and allowing the use thereof by, the District for non-banking purposes. Defendant contends the clause is not restrictive but permissive.

The general rules applied by courts in determining whether particular lease provisions are merely permissive or restrictive in character tend to explain the apparent reluctance to restrict a tenant's reasonable enjoyment of leased premises. Generally, a tenant is entitled to use leased premises for any lawful or valid purpose without interference by the landlord, as long as the use is not forbidden by any express provisions or by some necessarily implied construction of the instrument. With some variations this has been the view of most courts. See Annotation 148 A.L.R. at 585, Carbon Fuel Co. v. Gregory, 131 W.Va. 494, 48 S.E.2d 338, 2 A.L.R.2d 1143, and Annotation 1148; 32 Am.Jur., Landlord and Tenant, §§ 76 and 195; Noon v. Mironski, 58 Wash. 453, 108 P. 1069; Lyon v. Bethlehem Engineering Corp., 253 N.Y. 111, 170 N.E. 512; Turman v. Safeway Stores, 132 Mont. 273, 317 P.2d 302. This right of a tenant has been said to be the use of the premises in the same manner that the owner might have used them, subject to the qualification he must not use the premises in such a manner to constitute waste nor create a nuisance, Lyon v. Bethlehem Engineering Corp. and Noon v. Mironski, supra, or cause injury to the inheritance, Presby v. Benjamin, 169 N.Y. 377, 62 N.E. 430, 57 L.R.A. 317. However, implied covenants are not favored. 20 Am.Jur.2d, Covenants, Conditions and Restrictions, § 12; Turman v. Safeway Stores, supra.

Consonant with these views, covenants restricting or prohibiting the right of a lessee to assign or sublet the premises without the consent of the landlord, are restraints which

courts do not favor. " 'They are construed with the utmost jealousy, and very easy modes have always been countenanced for defeating them.' " Presby v. Benjamin, 169 N.Y. 377, 62 N.E. 430. Thus a covenant not to assign does not prevent an underletting and a covenant not to underlet is not broken by a sublease of part of the premises. Moore v. Guardian Trust Co., 173 Mo. 218, 73 S.W. 143, and Presby v. Benjamin, supra. These principles and the decisions that follow indicate disfavor of any words tending or claiming to restrict the right of a tenant to use the property, with the exceptions heretofore noted. This right may be limited or qualified by the terms of the lease, but it is not necessary for the tenant to show any particular provision of the lease to justify his right of use and the landlord who denies it must point out the covenant or term of the lease which expressly restricts the tenant's rights. Presby v. Benjamin and Lyon v. Bethlehem Engineering Corp., supra. The court in Hyatt v. Grand Rapids Brewing Co., 168 Mich. 360, 134 N.W. 22, wrote:

> "We are of opinion that the words in the lease, 'to be occupied for the purpose of operating and conducting a retail liquor business and saloon,' should be construed as permissive in character * * *. The language used is, in our opinion, permissive and not restrictive. The premises demised could have been used for other than the specified purpose."

Similarly, Security Trust & Savings Bank v. Claussen (Cal.—1919), 44 Cal.App. 735, 187 P. 140, said:

> "While the lease provided that the premises were to be 'used for the purpose of conducting and carrying on the business pertaining to a general retail liquor establishment,' such provision as to use is permissive rather than restrictive. Defendant was not limited in the use thereof to conducting a liquor business, but might carry on any lawful business therein". Citing cases.

The lease in Otting v. Gradsky, 1943, 294 Ky. 779, 172 S.W.2d 554, 148 A.L.R. 580, provided the " 'premises and buildings thereon are to be used as an auto wrecking and sale of

automobile parts' " with a provision barring sales of liquor, oil or grease. Plaintiff brought action to enjoin defendant from carrying on the business of buying, selling or storing waste paper, scrap iron, waste materials and the general junking business insisting the use clause was restrictive. Defendant contended the clause was descriptive or permissive and on demurrer to the complaint, judgment was for defendant tenant. Affirming, the court wrote:

> "A provision in a lease authorizing use for a certain purpose is generally regarded as permissive, instead of restrictive, and does not limit or impliedly forbid their use for similar or related purposes, so long as there does not result an injury of the landlord's rights, or are not expressly forbidden, or violate some statute or ordinance which would subject the lessor to liability. 32 Am.Jur. p. 191. Where words used in a lease are descriptive of the character of the premises, although indicating a particular use, the weight of authority is to the effect that such words do not constitute a restriction on the lessee in the use the words may indicate."

Where the tenant had subleased the premises for a grocery and dairy store, the court in Bovin v. Galitzka, 250 N.Y. 228, 165 N.E. 273, wrote:

> "The question for our determination is whether the words 'to be used and occupied [as a] real estate office,' constitute a restrictive covenant which prevents the lessee or his sublessees from using said 'corner store and part of cellar' for any purpose other than a real estate office. * * * There is no express covenant in the lease restraining the defendants from using the premises for a store. It is urged, however, by the landlord that the words in the lease 'to be used and occupied real estate office' have the effect of a restrictive covenant, and prevent the use of the premises by the tenant and his sublessees for any other purpose. * * * When the lease is examined as a whole, it seems reasonably clear that the words in question were used to express

the intended purpose of the lessee in regard to the use of the premises and not as a restriction upon the use of the premises to the one purpose stated."

Brugman v. Noyes, 6 Wis. 1, cited by the New York Court in Bovin v. Galitzka is one of the earliest opinions we have found on this subject. There the lease provided the buildings were **" 'to be used as cabinet warerooms' "**. Plaintiff insisted this was a covenant which absolutely restrained the lessee from using the buildings, except for cabinet warerooms and that using them for retailing cigars, iron safes, etc. was a breach of this covenant. We believe the court pointed out the crux of the difference between permissive and restrictive covenants, when it wrote:

"If the complainant had leased the premises expressly and exclusively to be used for a particular business, or in a particular manner, and there was a continuing breach or disregard of the stipulation, a court of equity would perhaps interfere and enforce the restriction, by compelling the lessees to use them for their business. (Citing cases including Steward v. Winters & Jaynes, 4 Sand.Chy.R. 387) The insuperable difficulty in this case is, that there is no express covenant not to use the buildings except for cabinet warerooms. The clause in the lease is, that the buildings were to be used as cabinet warerooms, without words of restriction. * * * The counsel for the complainant contends that the clause in the lease that the premises were to be used as cabinet warerooms, amounts to a direct covenant to use them as such, and for no other purpose whatever. We are unable to concur in this construction of the lease. * * * In Stewart v. Winters the lease contained the stipulation that the store should be occupied for the regular dry goods jobbing business, **and for no other kind of business.** * * * Had the lease in the case under consideration contained an express stipulation that the demised premises should be used as cabinet warerooms **and for no other purposes,** the cases would have been similar." (Emphasis by the court)

Carrying out this distinction, the New York Court in Lyon v. Bethlehem Engineering Corp., supra, enjoined use for purposes other than that named in the lease, where it provided the building was to be used for certain specific purposes " 'and those only' ".

The Brugman opinion is much quoted in Chamberlain v. Brown, 141 Iowa 540, 120 N.W. 334, where the court said:

"The proposition underlying the appellant's case is that the property was let for hotel purposes only, * * * As already suggested, if the lease expressly limits the use of the property to a specific purpose and prohibits its use for any other, a court of equity will upon a proper showing enjoin the violation of the restriction by the tenant. * * * With very few exceptions all of the cases applying this rule involve the consideration of leases which expressly and clearly provide that the property shall be used for a specific purpose, **and for no other".** (Emphasis supplied)

The landlord in Noon v. Mironski, 58 Wash. 453, 108 P. 1069, brought an action of eviction as the tenant commenced selling groceries in a storeroom when the lease stated it was rented " 'for the purposes of conducting a bakery therein' ". The court said:

"This is all that is said in regard to the restriction. There is in every lease, in the absence of express covenants to the contrary, an implied obligation on the part of the lessee to use the property lawfully and for lawful purposes, and to so use it as not unnecessarily to injure it, or to unnecessarily injure the inheritance. But in the absence of special restrictions in the lease the rule does not extend further."

As the lease to defendant Bank, after making provision for alterations of the interior of the building, then expressly limits other changes which cannot be made "without lessor's written consent", another reference to the Noon opinion is apt. The court then wrote:

"All that he agreed not to do was to make alterations to the premises without the written consent of the lessor. So that the matter complained of was not included within the restrictions imposed upon the lessee, and, there being no other restrictions expressed in the lease, it will be presumed that they were all the restrictions within the minds of the contracting parties."

Plaintiff introduced in evidence the prior lease between the Bank and Baron brothers who then owned the building as individuals and now own it as a corporation. It included a clause as to use similar to the one in the present lease with the additional words "and for no other purpose". In opinions we have cited these, or similar limiting words, were deemed necessary to restrict the tenant's right of use. They were omitted from the current lease; to adopt plaintiff's contentions would require these words to be added to the lease and this we cannot do.

The parties have not cited or argued the effect of SDC 38.0419. That section provides the landlord may hold the tenant responsible for the safety of the premises during an unauthorized use or he may treat the contract as rescinded. Plaintiff makes no claim under the safety clause nor has it attempted to rescind. Rather than rescind and terminate the lease, which it must have done promptly (SDC 10.0804), plaintiff contends the reverse—it asserts a desire to keep the lease in effect and enforce it. It was undisputed the bank had paid the rental required by the lease and no issue was presented as to its liability in that respect. We conclude the phrase lessee "will use" the demised premises without other words expressly limiting the use is indicative only of an intention and expectation to use the property for the purposes stated and should be construed as permissive and not restrictive.

The last three paragraphs of the Judgment declaring the measure of damages in the event of changes and alterations in the leased premises and decreeing that the lease "does not compel the continued use of the premises by operation of a bank therein" are affirmed; the remainder of the Judgment is reversed and the action remanded to the trial court with direc-

tions to enter appropriate conclusions of law and Judgment on the present record not inconsistent with this opinion. Costs are to be taxed for respondent Bank.

ROBERTS, RENTTO and HOMEYER, JJ., concur.

HANSON, P. J., dissents.

HANSON, Presiding Judge (dissenting).

By written lease, dated July 31, 1952, plaintiff leased the following portions of the nine-storied National Bank of South Dakota Building to the National Bank of South Dakota for a term ending December, 1972:

> "The banking room, now and heretofore occupied by lessee, upon the first or ground floor of said building, (including the balcony in the upper north part of said banking room; the Directors' room in the upper east part of said banking room; and that part of the east portion of the basement which is connected with said banking room and has been used therewith, including vaults and toilets);

> "The money chests now situated on the north side of the vault in said banking room and all built-in bank fixtures and equipment in said banking room belonging to lessor;

> "The suites heretofore known as Nos. 201 and 202, being the rooms and space on the balcony level at the front or Phillips Avenue side of said building * * * and the space heretofore known as suites 200A and 201A upon the second floor of the annex or eastern addition of said building, comprising 1532 square feet, being all of the second floor of the building;

> "The basement space * * *.

> "Ingress and egress to all the foregoing parts of the demised premises for the purpose of lessee's business and for all incidental purposes, over the existing ways and means, including elevator service as needed."

The upper seven floors of the building are used as offices and are leased to other tenants. The Bank's lease contains the following provision:

> "Lessee will use the demised premises for the purposes of its banking and trust business and such other and incidental business as shall be lawful."

To construe this provision of the lease as descriptive or permissive is to render it meaningless. The language of the lease is not the only manifestation of the parties' intention. Extrinsic factors such as the character of the premises and conduct of the parties may also be considered. When a farmer agrees in a lease to use agricultural property as a farm I believe he is restricted to that use. Similarly, when the National Bank of South Dakota agrees to use the banking rooms in the National Bank of South Dakota Building for "the purposes of its banking and trust business and such other and incidental business as shall be lawful" it also is restricted to that use. This was the conclusion of the Hon. Roy D. Burns, arrived at by the following persuasive reasoning in his memorandum opinion:

> "The words 'may use' are permissive. The words 'must use' are restrictive. Had the use been stated for banking purposes 'only' or 'exclusively' or 'not otherwise' the restrictive intent would have been clear. But the parties used the words 'will use.' In view of the construction of the leased premises for banking purposes, their peculiar adaptability for such purpose, the negotiations had between the parties including letters indicating the intention of the parties, I construe the words 'will use' as restrictive and that the Bank in its use of the premise is restricted to the use thereby 'for the purposes of its banking and trust business and such other and incidental business as shall be lawful.' "

This conclusion is fortified by the following statute which was not cited or argued by either party:

> SDC 38.0419 "If premises are leased for a particular and specified purpose the tenant must not use the

premises for other purposes; and if he does, the landlord may hold him responsible for the safety of the premises during such use, at all events, or he may treat the contract as thereby rescinded."

Furthermore, the lease does not contain the usual prohibition against assigning or subletting the premises without consent of the owner. It would be unnecessary under a restrictive use clause. But when this clause is construed to be descriptive, the lessee may sublease the premises to whomsoever it pleases for whatsoever purpose without regard to the owner's interest or consent.

I would affirm.